Ryan *v.* Trustees of Shawneetown et al.

EBENEZER Z. RYAN, surviving assignee of the President, Directors, and Company of the Bank of Illinois, Plaintiff in Error, *v.* THE TRUSTEES OF THE TOWN OF SHAWNEETOWN and others, Defendants in Error.

ERROR TO GALLATIN.

A mortgage given to secure a loan limited to twenty thousand dollars, and under other specific regulations on the face of the mortgage, must be followed strictly to bind the guarantors or sureties.

Guarantors and sureties are not to be made liable beyond the express terms of their contract and undertaking. They have a right to prescribe the terms and conditions upon which they will assume a responsibility, and no other person has a right to change those terms, even with the design of diminishing the probability of ultimate loss by the sureties; and courts have no right to inquire whether the change is advantageous or not.

A bill is multifarious when it seeks to litigate several claims or demands which are in their nature separate and distinct from, and have no relation with, or dependence upon, each other. It was proper to make the owners of the property, not included in the mortgage, parties to the bill seeking its foreclosure. And the trustees of the town were also properly made parties to the bill, for they were ultimately liable for the debt, and consequently interested in taking the account.

AT June term, 1850, of the Gallatin Circuit Court, the demurrer to the complainant's bill was sustained, and the complainant declining to amend the bill, it was dismissed.

The bill charges, that the trustees of Shawneetown, "incorporated by an act of the General Assembly, &c., entitled, 'An Act concerning Shawneetown, approved 10th January, 1825, and Acts amendatory to the same,' wished to borrow from the bank, &c., money to enable them to make improvements in town. That to enable them to effect the loan, and guarantee repayment thereof to the amount of twenty thousand dollars and interest, the owners of certain lots in Shawneetown executed a mortgage to the bank in the following words : —

'This indenture, made the 28th August, 1837, between the undersigned, proprietors of lots in Shawneetown of the first part, and (the bank) of the second part, witnesseth, that for and in consideration that the bank has agreed to loan for the term of ten years to the trustees of Shawneetown, in their corporate capacity, a sum not exceeding $20,000, for the purpose of grading and paving with rock the river bank opposite said town, from the south side of North Second street, to a point opposite the lower corner of Jun. lot No. 1,161 in said town ; said trustees paying interest annually at 6 per cent. per annum on such

portions thereof as may from time to time be drawn for the purpose aforesaid from the respective times when the same shall be drawn, and paying the principal of said loan, actually drawn, in instalments of ten per cent. per annum, after the first day of January, 1839, the undersigned do hereby respectively, each for himself, grant to the said parties of the second part, their successors and assigns, for ever, a lien in the nature of a mortgage on the lot or part of lot or lots set down, numbered, and described, opposite to his name. To have and to hold the same, &c., as collateral security for the punctual payment by said trustees of the interest and eventual payment of the principal of said loan, agreeably to the contract of said trustees ; — Provided, first, and it is the distinct understanding of the parties hereto, that it shall at all times be competent for any of the undersigned, his heirs, executors, administrators, or assigns, so soon as the expense of said grading and pavement shall be known, to pay the said bank his proportionate share of said expense, to be made out according to the number of feet front, which he or she has subscribed, and be released from this mortgage without affecting the liability of the parties. 2d. It is further understood, that the undersigned incur by this instrument no personal or other liability than to the extent of the value of the property mortgaged by them respectively, nor upon that beyond his or her fair ratable share and proportion, agreeably to the number of feet he or she has. 3d. It is further understood, that after any one shall have released his or her property from the lien hereby created upon the same, by the payment of the money agreeably to the first of the above provisions, he or she shall be entitled to have the same refunded in just proportion, or wholly, if in the end the whole loan shall be paid by the said trustees. In witness,' &c. That the bank, in consequence of such mortgage security, did from time to time advance to and in favor of said trustees large sums of money, of which, as appears by the cash account in said bank, a balance is still standing due and unpaid, of thirty-eight thousand three hundred and eleven dollars and thirty-nine cents, by note of the trustees of Shawneetown, dated the first of January, 1841, and bearing interest from date, at 6 per cent. ; and one thousand six hundred and eighty-eight dollars and 61 cents by book account; that with the funds so borrowed the said trustees proceeded to the completion of the work referred to in said mortgage, at a cost of $      , as will appear by the report of the work and estimates thereof reported to said trustees on the        day of       , 1839, a copy whereof was filed with the bill, whereby and by means of such improvement the said several lots were

secured from encroachments of the river; that certain lots were then owned by the proprietors who were not parties to said mortgage, but which lots, however, were embraced in said improvements, and equally benefited by it, to wit, &c.; that said trustees of Shawneetown became and were long since wholly insolvent, and the inhabitants of Shawneetown abandoned their charter, and recently organized, under the 25th chapter of Revised Statutes, and have elected           trustees, who are now the president and trustees of Shawneetown. The bill further represented and charged that the residue of the funds so borrowed by said trustees of Shawneetown, deducting the cost of the completion of said work mentioned in said mortgage, was expended by said trustees, for the use and benefit of the inhabitants, and with their consent, by making further improvements in connection with said work first mentioned, by means of which improvement the value of the property of the proprietors of the lots above set forth was and is greatly enhanced, and they in justice should be required to pay and discharge the whole of said debt; that on the 19th of October, 1848, W. A. Docker paid $6,282.10, his proportion, &c.; that although said several sums have been long since due, they are not paid," &c.

### Copy of Note.

$38,311$\frac{39}{100}$.                Bank of Illinois.

Shawneetown, 1st January, 1841.

On or before the first day of January next, We, the trustees of Shawneetown, and our successors in office, promise to pay the president, directors, and company of the Bank of Illinois, the sum of thirty-eight thousand three hundred and eleven dollars and $\frac{39}{100}$, payable with interest from hereof until paid, at the rate of six per cent., &c. In witness, &c.,

[Seal.]    W. A. DOCKER, President, &c.

Attest,    J. M. JONES, Clerk.

### Causes of demurrer assigned.

1st — that the bill is exhibited against H. Eddy and others, for several distinct matters and causes, in many whereof, as appears by the said bill, these defendants were not in any manner interested or concerned: by reason of which said distinct matters the said bill is drawn out to a considerable length. And these defendants are compelled to mingle their rights and defence with others and other distinct matters, and by joining these defendants and distinct matters and others together which

do not depend upon each other in the said bill — the pleadings, orders and proceedings will, in the progress of said suit, be intricate and prolix, and these defendants put to unreasonable costs in defending the same, although several parts thereof, and the rights, equities, and defences of the other defendants no ways concern them.

2. The bill does not show any performance of contract by complainant.

3. That the president and trustees of Shawneetown had no authority or power to borrow money.

W. THOMAS and G. KOERNER, for plaintiffs in error.

W. B. SCATES and S. S. MARSHALL, for defendants in error.

CATON, J. This mortgage was executed for the purpose of guaranteeing the performance of a contract between the bank and the corporate authorities of Shawneetown, the terms of which are recited in the mortgage. The guarantors only pledged their property for the performance of such a contract as is there specified, and the mortgage cannot be forfeited by the violation of any other agreement.

The bill states, that the president and trustees of the town of Shawneetown, desired to loan of the bank a sum of money sufficient to enable them to make certain improvements, and that for the purpose of enabling them to effect such loan and to secure the repayment thereof, to the amount of twenty thousand dollars, with interest, the mortgage was executed. The recital in the mortgage is, that in consideration that the bank had agreed to loan for the period of ten years to the trustees of Shawneetown, a sum not exceeding twenty thousand dollars, for the purpose of making the specified improvement, the trustees paying interest annually, at the rate of six per cent. on such portions thereof as might from time to time be drawn for the purpose aforesaid, from the respective times when the same should be drawn, and paying the principal of said loan actually drawn, in instalments of ten per cent. per annum, after the 1st day of January, 1839, the mortgage was executed. After setting out the mortgage, the bill goes on to aver that the bank, "in consequence of such mortgage security and guaranty of repayment, did from time to time," &c., advance to the trustees "large sums of money, of which, as appears by the cash account in said bank, a balance is still standing due and unpaid, of thirty-eight thousand and eleven dollars and thirty-nine cents, by note of the trustees of Shawneetown, dated the

1st of January, 1841, and bearing interest from date, at the rate of six per cent. per annum, and one thousand six hundred and eighty-eight dollars and sixty-one cents, by book account.

This is all the bill contains in relation to the loan made by the bank to the trustees; and it entirely fails to show that the loan was made in pursuance of and upon the terms as specified in the mortgage. Indeed, the bill does not pretend that any such loan was made, nor does it pretend to set forth how much money was loaned or advanced to the trustees, or upon what terms. The mortgage limits the amount of the loan to twenty thousand dollars, and says it shall not exceed that sum, and specifies the rate of interest and the extent of credit. The bill shows that the loan was for a much larger amount, but upon what credit we are not informed. It may have been but for six months or for twenty years, while the mortgage says that the terms of the loan to secure which it was given, should require it to be repaid by the trustees in annual instalments of ten per cent. after the 1st of January, 1839, and that the accruing interest should be paid annually. The sureties have never undertaken to guarantee the performance of such an agreement as was made. They expressly stipulated in the mortgage that the loan should not exceed twenty thousand dollars, while the bill shows us that it was for nearly twice that sum. It is not an answer to say, that the sureties are only sought to be held responsible to the extent of twenty thousand dollars; for it may well be, that they would not have become responsible for any amount but for the assurance that the loan should be limited to the amount stipulated. The ability of the corporation to pay the debt must have been taken into consideration by the guarantors before they assumed any responsibility; and it was unjust to them for the bank to increase the liability of the corporation beyond the amount stipulated. Guarantors and sureties are not to be made liable beyond the express terms of their engagements. They have a right to prescribe the terms and conditions upon which they will assume a responsibility; and no person has the right to change those terms, even with the design of diminishing the probability of ultimate loss by the sureties.

If it were competent to change the terms of the contract which the guarantor undertakes to see fulfilled, it would be equally proper to change the parties to it, and it would be no sufficient answer to say that the person for whom the guarantor agreed to be bound, was less responsible than the one to whom the credit was finally given. Courts have no right to inquire whether the change in the terms of the agreement was advantageous to the sureties or not. We cannot enforce terms which the parties have not stipulated to fulfil.

Here the bank not only increased the liability of the town corporation beyond the amount stipulated in the mortgage, and thereby manifestly increased the hazard of the guarantors, but it is not shown that the credit was given which was provided for in the mortgage. Before a liability could attach upon the mortgage, it was for the bank to show that such a loan had been made as the mortgage was given to secure. This the bill entirely fails to show; and hence we cannot hold that any liability has attached under the mortgage.

The bill also seeks to establish a lien upon other property than that embraced in the mortgage, but which was benefited by the improvement which was made with the money loaned by the bank; but this claim was abandoned upon the argument, and very properly, for there is not a semblance of law for its support.

The bill was objected to for multifariousness.

A bill is multifarious when it seeks to litigate several claims or demands which are in their natures separate and distinct from, and have no relation or dependence upon, each other. Story's Eq. Pl. § 271 *et seq.*, and § 530, 531, 532, 533, 534. It may frequently be a nice and difficult question to determine whether a bill is obnoxious to the charge of multifariousness. In this case no difficulty is observed; we think the objection is not well taken. The bill seeks to subject the property mentioned in the mortgage to the payment of twenty thousand dollars of the money advanced; and for the residue, it seeks to subject this, together with other property benefited by the improvement, to liability on account of such benefit. Were the complainant entitled to the relief sought, it was proper to seek it all in one bill, although two different liens are sought to be enforced. The amount of the liability of one of the liens, assuming that there was a liability, would depend upon the extent of the other. It was proper to make the owners of the property not included in the mortgage, parties to the bill seeking its foreclosure, because they were interested in establishing the mortgage, and thereby decreasing the debt to which they would be liable to contribute; and in distributing this liability among the several lots benefited by the improvement, the owner of each should of course be required to be present. Although here are separate liabilities sought to be established, they are not independent of, and disconnected from, each other; and if the several claims could be sustained at all, they might and indeed should be enforced in one suit. But one debt is sought to be collected, although different persons, or rather different estates, are sought to be subjected to the payment of different portions

of it, while the extent of the liability of one, depends upon the extent of the liability of another.

The trustees of the town were also necessary parties to the suit, for they would be ultimately liable for the repayment of the whole debt, and had a direct interest in the taking of the account.

As the bill shows no liability against any of the parties sought to be charged, the demurrer was properly sustained, and the decree of the circuit court must be affirmed.

*Decree affirmed.*