**78** FINNEY *v.* CONDON *et al.* [Sept. T.

Syllabus.

# GEORGE C. FINNEY

*v.*

# WILLIAM H. CONDON *et al.*

1. BUILDING CONTRACT — *architect's certificates conclusive on both parties.* In a contract to build a house, in which performance on the part of the contractor is guaranteed by others, and by which contract it is provided that eighty-five per cent shall be paid semi-monthly as the work progresses, on the architect's certificate, whose opinion, certificate, report, and decision on all matters shall be binding and conclusive, the estimates and decisions of the architect as to the work done and the sums to be paid are conclusive on all the parties to the contract, including the guarantors.

2. SURETY — *not released by payment on insufficient certificate.* Where payment is to be made to a contractor on the certificate of an architect at a certain per cent of the materials furnished and work done, any certificate or estimate made by the architect which is so treated by the parties interested is sufficient to justify payments as against a guarantor or surety of the contractor.

3. SAME — *what will release.* Where the performance of work is guaranteed by sureties of a contractor, the reserved per cent to be withheld from the contractor until the completion of the work to be done is as much for the indemnity of the surety as for him for whom the work is being done; and if such reserved fund is given up or released without the surety's consent, it will discharge him from his undertaking.

4. Where a contract for the erection of a building provided for payments, on the first and middle of each month, of eighty-five per cent on estimates to be made by the superintending architect, and the remaining fifteen per cent when the work should be completed, and that the architect's estimates should be conclusive, and under this contract the defendants executed a written guaranty for the faithful performance of the contract by the contractor, and the owner made various payments on these estimates, where the contractor failed to complete the work, it was *held*, that, although the owner may have paid more than the eighty-five per cent of the work done, according to the contract price, but it not appearing that they exceeded the proper per cent of the cost of the work, this did not release the guarantors, they being also bound by the estimates.

APPEAL from the Circuit Court of Cook County; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. GRANT & SWIFT, for the appellant.

Messrs. TULEY, STILES & LEWIS, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

On July 1, 1873, Charles Moore entered into a written contract with George C. Finney, by which Moore agreed to furnish all materials and erect and complete two brick dwelling-houses within four months and fifteen days from that date, according to plans and specifications made part of the contract, for the sum of $13,000, to be paid in installments of eighty-five per cent on estimates to be made by the architect superintending, as the work progressed, on the 1st and 15th of each month, and the remaining fifteen per cent when the work was all completed. It was stipulated the work was to be done under the supervision of an architect selected, whose duties, as set forth in the contract, consisted in "giving, on demand, such interpretations, either in language, writing, or drawing, as in his judgment the nature of the work may require, having particular care that any and all work done and materials used for the work be such" as in the contract described, and whose "opinion, certificate, report, and decision on all matters to be binding and conclusive." By their writing underneath the contract, and by them subscribed, defendants guaranteed the faithful performance of the contract, and bound themselves to indemnify the owner against liens, or from any loss that might accrue to him from failure in any way by Moore to fulfill his contract. The contractor failed to complete the buildings, and it is upon the guaranty of the sureties this action is brought to recover the excess over the contract price the owner was compelled to expend in completing that which the contractor left undone.

Two distinct defenses are insisted upon : first, plaintiff, without the knowledge or consent of the sureties, extended the time to the contractor in which to fulfill his agreement ; and, second, plaintiff paid the contractor a sum greater than eighty-five per cent of the work done as it progressed, in violation of the terms of the contract the sureties had guaranteed the performance of, which so changed its terms as to discharge them from their undertaking.

So far as the first defense relied on is concerned, there

is no evidence in the record to sustain it. Plaintiff denies most positively that he ever extended the time of the performance of the contract. It does not appear he was ever asked to do so. On that subject he admits he said, if the buildings were completed within a certain time beyond the period fixed, he would waive all claims for damages. One or two of defendants say plaintiff told them he had extended the time for the completion of the work; but the contractor does not say it was ever extended, or that he ever asked to have it done. No valid extension of the time of performing the agreement, founded on any consideration, was proven, and the point made need not be further discussed.

All the difficulty in the case arises on the other branch of the defense sought to be made. Evidence in the record shows the contractor, on November 16th, which was the next day after the work should have been completed, notified the architect he was compelled to abandon his contract, which he did. Notice was given to plaintiff, and immediately he gave defendants notice of the failure of the contractor to fulfill his agreement. It seems the work was relet by the architect, to be finished, and it cost plaintiff a sum greatly in excess of the contract price.

During the progress of the work plaintiff paid the contractor, from time to time, under the directions of the architect, sums of money amounting in the aggregate to $10,850. A question is raised that the several payments were made without sufficient warrant from the architect; but there is no just ground for complaint on that score. No doubt the certificates authorizing the payments to be made were informal. Any certificate that is in fact an architect's estimate, it is apprehended, will be sufficient. In this case the witness says the certificates given in evidence were "architect's estimates," and it appears they were so treated by the parties interested.

The point relied on most confidently in the defense is, that the sureties for the performance of the contract are released from all liability thereon, on account of payment exceeding

eighty-five per cent of the work done having been made to
the contractor without their consent before the completion
of the work. The law upon this subject seems to be,
the reserved per cent to be withheld until the completion
of the work to be done is as much for the indemnity of
him who may be a guarantor of the performance of the con-
tract, as for him for whom it is to be performed. And there
is great justness in the rule adopted. Equitably, therefore,
the sureties in such cases are entitled to have the sum agreed
upon held as a fund out of which they may be indemnified,
and if the principal releases it without their consent it dis-
charges them from their undertaking. The principle is, the
withdrawal of the fund agreed upon as security for the per-
formance of the contract without his consent is a prejudice
to the surety or guarantor. Sureties and guarantors are
not to be made liable beyond the express terms of their en-
gagements. They have the right to prescribe the terms and
conditions on which they will assume responsibility, and
neither of the principals can change those terms without the
consent of the sureties, even with a view to avoid ultimate
liability. As sustaining the views expressed, we cite the
following authorities: *Ryan* v. *Trustees of Shawneetown,*
14 Ill. 20; *Calvert* v. *London Dock Co.,* 2 Keen, 638;
*Steam Navigation Co.* v. *Bolt,* 6 C. B. (N. S.) 550.

The rule of law is well enough settled, but the difficulty
consists in the application of the principle to the facts of
the defense. We do not think a case is made that comes
within the rule declared in the cases cited *supra.* Under
the contract which defendants guaranteed, payments of
eighty-five per cent of the work done were to be made
semi-monthly on the architect's estimates. His estimates
and decisions were as conclusive upon defendants as upon
plaintiff. Conceding the architect's estimates of the install-
ments to be paid semi-monthly were inaccurate, how is
plaintiff any more responsible for his error of judgment
than defendants? By the terms of the contract his decisions
on all questions arising under it are binding on all parties —

6 — 86TH ILL.

upon the sureties as well as the principals.    There is
nothing in the record that contradicts the statement of
plaintiff that he in good faith thought he was only paying
eighty-five per cent of the work; and the architect's testi-
mony is to the effect he estimated but eighty-five per cent
of the work done, and that he aimed to withhold the fifteen
per cent agreed upon.    The aggregate of all payments
exceed eighty-five per cent of the contract price, but it is
not proven they exceed eighty-five per cent of the work
actually done and in fact estimated by the architect.    It is
conclusively shown the work was taken too low, and it
could not be finished within the contract price.    That fact
may afford a reasonable explanation for the large estimates
of the architect in proportion to the whole sum to be paid.
The estimates made may not have exceeded eighty-five per
cent of the materials furnished and work in fact done by the
contractor, but in proportion to the whole sum to be paid
they did exceed the per cent to be paid before the whole
work should be completed.    Relatively they were in excess
of what the payments ought to have been, but may not
have been in fact.    On this branch of the case the evidence
is not very full.    But, conceding the fact the architect's
estimates paid by plaintiff exceeded eighty-five per cent of
the work done, we do not think plaintiff is in any manner
responsible for the error made, and ought not to lose his
security because of an error of judgment in the architect,
who was as much the umpire to determine such questions
for defendants as for other parties to the contract.

Besides, plaintiff was not competent to make measure-
ments of the work.    He had no means of knowing he was
making payments in excess of the sum agreed upon.    His
contract obligated him to make payments on the architect's
estimates, and had he failed to do so the sureties with some
propriety might have complained it was to their prejudice,
and, as plaintiff had not himself observed the contract, they
ought not to be bound.    As we have seen, all parties had
agreed the decisions of the architect upon questions arising

under the contract should be conclusive upon them. Making estimates of the work was among the duties it was agreed he should perform, and no reason is perceived why his decisions as to the amount of work actually done were not as binding upon defendants as upon plaintiff, or the contractor for whom they were sureties. *McAvoy* v. *Long*, 13 Ill. 147; *McAuley* v. *Carter*, 22 id. 53; *Korf* v. *Lull*, 70 id. 420.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*