(No. 15165.—Judgment affirmed.)

HARVEY GUNSUL, Receiver, Defendant in Error, *vs.* THE AMERICAN SURETY COMPANY OF NEW YORK, Plaintiff in Error.

*Opinion filed April 18, 1923—Rehearing denied June 13, 1923.*

1. APPEALS AND ERRORS—*circuit court has no jurisdiction to enter stay order pending review.* Where a decree has been entered requiring a receiver to pay over a certain sum of money for the benefit of creditors, and the receiver, being unable to give the appeal bond provided in the decree, prosecutes a writ of error, the circuit court has no jurisdiction to enter at a subsequent term, even with the consent of the parties, an order attempting to stay execution of the decree until the cause is disposed of on review, as such an order can be made only by the court of review.

2. PRACTICE—*when courts of general jurisdiction may enter stay orders.* Courts of general jurisdiction have power to temporarily stay execution of judgments rendered by them when necessary to accomplish the ends of justice, but the stay in such cases must be for some cause other than the pendency of proceedings in an appellate tribunal for review of the judgment.

3. BONDS—*rights of surety on receiver's bond after decree is entered against the receiver—review.* A receiver is under no obligation to his surety to have a decree requiring him to pay over money to a creditor reviewed either by appeal or writ of error nor to give a bond pending such review; nor is the party to whom the money is directed to be paid under any obligation to the surety to levy on and sell the property of the receiver while the case is pending on review, where the property is worth more than the amount of the decree, but the surety has the right to satisfy the decree and become subrogated to the rights of the decree creditor.

4. SAME—*surety companies must prove injury resulting from extension of time by creditor.* In the case of voluntary sureties for accommodation, if the creditor by valid and binding agreement, without the consent of the surety, gives further time for payment to the principal, the surety is discharged whether actually damnified or not; but surety companies doing a surety business for profit cannot be relieved from their obligations except where it is shown there was a material departure from the contract which has resulted in some injury to the surety.

CARTWRIGHT, J., specially concurring.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. ADAM C. CLIFFE, Judge, presiding.

F. F. & J. V. NORCROSS, for plaintiff in error.

JOHN K. NEWHALL, (JOHN M. RAYMOND, of counsel,) for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes to this court on petition for writ of *certiorari* to review a judgment of the Appellate Court for the Second District affirming a decree of the circuit court of Kane county against petitioner, the American Surety Company of New York.

Frank W. Cherry was on July 10, 1916, by the circuit court of Kane county appointed receiver of the Chicago, Aurora and DeKalb Railroad Company and gave bond as such receiver in the sum of $25,000, with the American Surety Company of New York as security. Cherry continued to act in the capacity of receiver until September, 1917, when he presented to the court his report and also his resignation as such receiver, his resignation "to take effect and be accepted only on the entry by the court of its final order" upon the report filed with the resignation. At a later date of the same term of court Cherry filed a supplemental report of his receivership, and an order was entered approving the report, accepting the resignation and discharging Cherry as receiver. At a later date of the same term, on the application of intervening creditors, the order approving Cherry's report was vacated, and on January 15, 1918, Harvey Gunsul was appointed receiver in place of Cherry. Creditors, and Gunsul as receiver, instituted proceedings in the receivership case, charging that Cherry, while receiver, had made large profits by dealing in the stocks and bonds of the railroad company, which he should

account for to the creditors. That proceeding resulted in a decree July 16, 1918, ordering and directing Cherry to pay to Gunsul, as receiver, $52,416.71, with interest at five per cent from the date of the decree, and that execution issue therefor. Cherry prayed an appeal from the decree to the Appellate Court, which was allowed upon his giving bond in the sum of $70,000 within sixty days and filing a bill of exceptions. No appeal was perfected but a writ of error was sued out of the Appellate Court. No order was obtained making the writ of error a *supersedeas* and no *supersedeas* bond was filed. On the 9th of September, 1918, which was a term of court subsequent to the one at which the decree was entered, on the petition of Cherry the following order was entered by the circuit court of Kane county:

"This cause having come on to be heard upon the petition of F. W. Cherry filed herein, and the said F. W. Cherry appearing by John A. Russell, his solicitor, and Harvey Gunsul, receiver of the Chicago, Aurora and DeKalb Railroad Company, appearing for himself and by John K. Newhall, his solicitor, and the court having heard said petition read and being now fully advised in the matter, and having heard the argument of counsel in respect thereto, doth find that said petitioner desires to have the decree heretofore entered submitted to the Appellate Court of the Second District of the State of Illinois for review on writ of error, and that said petitioner is now actively engaged in prosecuting said writ of error for the purpose of reviewing the decree heretofore entered against the said F. W. Cherry and for the purpose of reversing the same. It is therefore ordered, adjudged and decreed by the court, that during the time said cause is pending for review either in the Appellate Court of the Second District of the State of Illinois or in the Supreme Court of the State of Illinois, that in case a certificate of levy shall be issued upon the decree heretofore entered against the respondent, F. W.

Cherry, in the above entitled cause during the pendency of said cause on review, that such certificate of levy shall not be assigned, transferred or sold by the said Harvey Gunsul, receiver of the said Chicago, Aurora and DeKalb Railroad Company, nor by said company, nor by the successor of the said Harvey Gunsul in case one should be appointed, and that no sale shall be made thereunder until said cause shall have been finally disposed of on review. It is further ordered, adjudged and decreed by the court, that the said F. W. Cherry shall prosecute his said appeal with diligence, to the end that a full determination thereof may be had as expeditiously as reasonably it may be. It is further ordered, adjudged and decreed by the court, that in case said Cherry shall not prosecute his said appeal with diligence, that said Harvey Gunsul, receiver as aforesaid, may apply to the court to have this order modified, vacated or set aside."

Cherry prosecuted his writ of error with due diligence. The Appellate Court affirmed the decree against him in the main but slightly reduced the amount found due from him, reversed the decree and remanded the case, with directions to the circuit court to modify the decree in accordance with directions given in the Appellate Court opinion. The judgment of the Appellate Court was reviewed on writ of error by this court and affirmed. (See 217 Ill. App. 213; 297 Ill. 130.) On filing the final mandate in the circuit court the decree was made to conform to the directions of the final remanding order. This suit was brought by Gunsul as receiver on the bond given by Cherry as receiver in the sum of $25,000, which was signed by plaintiff in error as surety.

At the time the decree was entered by the circuit court against Cherry, July 16, 1918, he was the owner of 440 acres of land in Green county, Illinois, which was free of incumbrance, and on the 18th of July a transcript of the decree was filed in the recorder's office of Green county for the

purpose of making it a lien on the land in that county and an execution was issued on the transcript. No attempt was made to sell the Green county lands by virtue of the decree while it was pending for review in the Appellate Court and in this court. Plaintiff in error filed four special pleas to the declaration of Gunsul, receiver, on the bond of Cherry, but its defense is embraced in the fourth plea. That plea alleges the filing of the transcript of the decree in the office of the recorder of deeds of Green county in order that it might become a lien against the lands of Cherry in that county, which were alleged to be reasonably worth more than the amount of the decree. The plea alleges Cherry prayed an appeal from the decree, which was allowed upon his filing bond in the sum of $70,000 within sixty days, and that thereafter, and before the expiration of sixty days, on September 9, 1918, a consent order, by agreement between Cherry and Gunsul, was entered by the circuit court of Kane county without notice to or consent of plaintiff in error, which order is set out in full in the plea, the material portion of which we have above quoted. The plea alleges that Cherry, in reliance upon said order, did not perfect his appeal but prosecuted a writ of error, which was finally disposed of upon review in the Supreme Court on April 14, 1921, a period of more than two years after the entry of said consent order. The plea alleges "that by reason of the entry of said consent order postponing the sale of said farming land and waiving the giving of said appeal bond, and in the meantime reserving to the plaintiff the right to the immediate issuance of a certificate of levy or sale as set forth in said order, all without the consent of this defendant, this defendant was released and discharged from all liability as surety of said F. W. Cherry upon said receiver's bond in plaintiff's declaration mentioned."

Plaintiff in error contends the order of the circuit court of Kane county of September 9, 1918, was entered by con-

sent as an agreed order between the obligee and the principal in the bond without consent of the surety; that it was a binding agreement for a stay of execution of the decree against Cherry; that the obligation guaranteed by the surety should not be enforcible until the expiration of a certain period of time; that this essentially changed the original obligation for the performance of which the surety was bound, and such surety not having consented thereto was released from liability, whether damnified or not.

The order of September 9 recited that Cherry was actively prosecuting a writ of error to review the decree against him and ordered that no sale be made under the decree until the cause shall have been finally disposed of on review.  In the first place, we are of opinion the court had no jurisdiction to enter the order.  The term at which the decree was entered had expired, and Cherry being unable to give an appeal bond, as required in the order allowing an appeal, had sued a writ of error out of the Appellate Court, which the order finds he was actively engaged in prosecuting.  He had not secured an order of the Appellate Court that the writ be made a *supersedeas.*  That court had the power to make the writ of error a *supersedeas* upon Cherry giving bond in an amount fixed by and with security approved by the court.  The petition for the order recites it would be difficult, if not impossible, for Cherry to give bond, and states that the petitioner owns 440 acres of land, all under cultivation, in Green county, Illinois, worth at least $50,000, free of incumbrances except taxes; that a transcript of the decree had been filed in Green county and was a lien on the land.  Petitioner stated he desired to have the decree reviewed and had sued out a writ of error for that purpose, and because of the difficulty of giving bond he prayed that no sale of the property be made, to the end that petitioner might be allowed to pursue his remedy in appellate tribunals without being required to cause a writ of error to be made a *supersedeas.*  The plain mean-

ing and effect of the petition was that the circuit court order that the writ of error be made to operate as and have the effect of a *supersedeas.* The circuit court had no jurisdiction to make any such order. Such an order could only be made by the court out of which the writ of error issued, and then only upon the party suing out the writ giving bond in an amount and with security approved by the court issuing the writ. (Practice act, sec. 106.)

Plaintiff in error contends the order of September 9 was simply a stay of execution entered in the exercise of the inherent powers of the court, pursuant to the consent of the parties. Courts of general jurisdiction have power to temporarily stay the execution of judgments rendered by them when necessary to accomplish the ends of justice, but the stay in such cases must be for some cause other than the pendency of proceedings in an appellate tribunal for review of the judgment. No circuit court has the power or jurisdiction to make an order staying execution until a case has been decided by a court of appellate jurisdiction. There is no pretense in the petition of Cherry or the order entered that a stay was desired for any other reason than that petitioner was unable to give an appeal or *supersedeas* bond, and he desired the circuit court to make the order that execution of the decree be stayed until a final decision of the case could be had on review. The circuit court had no jurisdiction to grant the order on any such ground, and the order was void, even though it was consented to by defendant in error.

Cherry was under no obligation to plaintiff in error to have the decree reviewed either by appeal or writ of error, nor was he under any obligation to give an appeal or *supersedeas* bond to secure a review of the decree. He did in good faith prosecute the writ of error without giving bond to have the writ made a *supersedeas,* as he had a right to do. Cherry's liability was debatable, as will be disclosed by an examination of the opinions of this court and of the

Appellate Court, and it was to the interest of plaintiff in error, as well as of Cherry, that the decree be reviewed. Plaintiff in error knew of the rendition of the decree against Cherry and knew of the proceedings by Cherry for review in the Appellate Court and this court, but claims not to have known whether Cherry gave an appeal bond or a *supersedeas* bond. As we have said, Cherry owed no duty to plaintiff in error to give any such bond to secure a review of the decree.

It appears from the record that the cost of the bond of Cherry as receiver, and upon which this suit was brought, was $125 per annum, payable in advance, and, as we understand it, the annual charge of plaintiff in error for signing the bond as security was paid up to and including July 10, 1920. Plaintiff in error was a surety for hire, and neither the pleadings nor proof shows plaintiff in error was prejudiced or injured by the consent order in any event.

The fourth plea alleged that by reason of the consent order postponing the sale under the decree, waiving an appeal bond and reserving the right to immediate issue of a certificate of levy, without the consent of plaintiff in error, discharged and released plaintiff in error from all liability as surety on the bond. When the transcript of the decree was filed in Green county and execution issued thereon it became and continued to be a lien on the land there. The proof tended to show that since the transcript was filed the land had increased in value $20,000 and was worth approximately $80,000. This proof was uncontradicted. Plaintiff in error had the right to pay the decree and become subrogated to the rights of the decree creditor against the land, which, according to the proof, was of ample value to pay the decree. Under the circumstances of this case defendant in error owed no legal duty to plaintiff in error to levy on and sell the land while the case was pending on review, and it was not to the interest of either of the parties that a sale should be made before the termination of the

litigation. Defendant in error testified he had no intention of selling the land while the case was pending in a reviewing court, and his counsel testified he regarded it as unwise to sell the land while the case was pending on review. It is true, the defendant in error had the legal right, in the absence of the writ of error being made a *supersedeas,* to proceed to sell the land under the decree, but it is obvious that it would have been the exercise of poor business judgment to have done so, as a possibility of a reversal of the decree would naturally have injuriously affected the sale of the land,—a matter in which plaintiff in error was as much interested as defendant in error. Plaintiff in error made no objection to the delay in making the sale. It claims to have had no knowledge whether Cherry had given bond to secure a review of the decree, but it does not claim to have made any effort or inquiry to ascertain whether he had.

Cherry contended in the trial and reviewing courts that the profits he had made in dealing in stocks and bonds of the railroad were made before he became receiver of the company and when he had a right to deal in the stocks and bonds of the company for his own profit. As we have said, his liability was debatable, and if his contention had been sustained by the reviewing courts his liability would have been defeated. It could not be foreseen whether the reviewing courts would sustain Cherry's contention, and the case was of such character that it seems very clear a delay in the sale of the land until the litigation was finally determined was to the interest of plaintiff in error and that defendant in error owed no legal duty to plaintiff in error to cause the land to be sold before the litigation was ended in the courts of review. This record shows clearly that plaintiff in error suffered no injury or damage by reason of the delay in causing a sale of the land, as it was worth more when the litigation was finally determined than it was when the decree was entered.

The defense of plaintiff in error is that the order of September 9 that no sale be made of the land until the case should have been finally disposed of on review is in effect an agreement between the obligee and the principal in the bond that the bond should not be enforcible until the expiration of a certain period of time, and plaintiff in error not having consented to the order was released from liability. What we have said as to the order being void for want of jurisdiction of the court to enter it would seem a sufficient answer to this contention, but if the order be considered as an agreement between the obligee and the principal of the bond to extend the time for enforcing the liability on the bond, we think still it must be held that plaintiff in error's contention cannot be sustained. In the first place, as we have attempted to show, the record discloses that the delay in selling the land was not due to any such an agreement or understanding but was due to the fact that it was the judgment of defendant in error and his counsel that the land could not be sold to advantage while the writ of error was pending, and it was not the intention of defendant in error to cause a sale to be made. That this was the exercise of good judgment we think cannot be denied, and the silence of plaintiff in error, with knowledge that proceedings were pending to review the decree, gives rise to the inference that it also was of the same opinion.

The weight of modern authority makes a distinction between the rights and liabilities of a voluntary surety or one who becomes a surety for mere accommodation, and the rights and liabilities of corporate sureties who become such for hire. In the case of voluntary sureties for accommodation, if the creditor, by valid and binding agreement, without the consent of the surety gives further time for payment to the principal, the surety is discharged whether actually damnified or not. (*Dodgson* v. *Henderson,* 113 Ill. 360; *Price* v. *Dime Savings Bank,* 124 id. 317.) Corporations doing a surety business for profit are of com-

paratively recent origin and their contracts are treated as contracts of indemnity or insurance. As to such sureties it is, we believe, generally held they cannot be relieved from their obligations except where it is shown there was a material departure from the contract which resulted in some injury to the surety. A discussion of this subject, with citation of authorities, will be found in 21 R. C. L., pages 1160 to 1162. (See, also, *Royal Indemnity Co.* v. *Northern Granite and Stone Co.* 100 Ohio St. 373, reported in 12 A. L. R. 378, with an extensive note, beginning on page 382.) We quote the beginning paragraph of the note: "Except in one jurisdiction it seems to be well settled that while the contract of an individual surety,—or a voluntary surety, as spoken of in some cases,—will be strictly construed and all doubts and technicalities resolved in favor of the surety, such person being regarded as a favorite of the law, this rule does not apply in the case of a company organized for the express purpose of acting as a surety for a compensation. The courts, with the single exception noted, agree that in the case of a surety company acting for compensation, the contract will be construed most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect. The courts further, in following this rule, regard the contract more in the nature of an insurance contract, and by analogy apply the rules governing liability applicable in the latter class of contracts." In *Board of Commissioners* v. *Clemens,* (W. Va.) 7 A. L. R. 373, the court held the rule applicable to voluntary sureties does not apply to corporations organized to become sureties for profit, and said: "An extension of time will not relieve a surety company on the bond unless the extension exceeds the time limited in the bond for bringing suit thereon nor unless the surety company is thereby made to suffer material harm,"—citing numerous authorities.

We conclude, therefore, that plaintiff in error's defense cannot be sustained because the order relied on as an ex-

tension of time was void for want of jurisdiction, and also because, if it be considered as an agreement between the obligee and the principal to extend the time for enforcing the obligation, the plaintiff in error has neither alleged nor proved that it suffered any injury thereby.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT: I concur in this conclusion.