(No. 22896.—

Louis Turk, Plaintiff in Error, *vs.* The United States Fidelity and Guaranty Company, Defendant in Error.

*Opinion filed June 14, 1935—Rehearing denied October 8, 1935.*

Wilson, J., took no part.

AARON SOBLE, (IRVING GOODMAN, of counsel,) for plaintiff in error.

EUGENE P. KEALY, for defendant in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

On July 11, 1930, the plaintiff below, Louis Turk, entered into a contract with A. E. Bjork whereby the latter undertook to furnish all labor and materials necessary to move back and re-set a certain building on Western avenue, in Chicago, in connection with the widening of that street and to comply with the provisions of a condemnation judgment. The contract price was $6700, $1000 of which was to be paid when the new location was excavated, $3000 to be paid when the building was moved, $1000 to be paid when sewer, water and plumbing had been installed, and the remaining $1700 to be paid within ten days after the completion of the contract. It was also set forth in the agreement that in case the contractor should be guilty of any substantial breach, the owner would have the right to terminate the agreement and engage another contractor to complete the job, in which circumstances the original contractor was to be liable for any and all damages, the wording being, "such damages to be deducted from part of the contract price that should remain due to the contractor." There was also a provision for a date of completion and liquidated damages in the event of delay beyond that date. To secure the performance of this contract a bond was executed by the contractor with the defendant, the United States Fidelity and Guaranty Company, as surety, the principal sum of the bond being the full contract price of $6700. It was the condition of the bond that it should be void only in the event the contractor should "perform and fulfill all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and ful-

filled, and shall keep the said obligee harmless and indemnified from and against all and every claim, demand, judgment, lien, cost and fee of every description, incurred in suits or otherwise against the said obligee, growing out of or incurred in, the prosecution of said work according to the terms of the said contract, and shall re-pay the said obligee all sums of money which the said obligee may pay to other persons on account of work and labor done or materials furnished on or for said contract, and if the said principal shall pay to the said obligee all damages or forfeitures which may be sustained by the non-performance or mal-performance on the part of the said principal of any of the covenants, conditions, stipulations and agreements of said contract," etc.

The contract contained within itself certain specifications but there were no plans, it being provided as to plans that the contractor should furnish such as might be necessary. Neither were there any provisions for an architect nor for architect's certificates upon which to make payments. The full contract and specifications are set forth in the declaration and are of a very simple nature. There is no provision as to any umpire, arbitrator or agent for the purpose of determining when the payments were to be made except as above indicated, and the whole agreement indicates little more than that the building shall be moved back upon a new foundation, with its necessary implication that it be done in a workmanlike manner.

The amended declaration in the case sets forth the bond and the contract, with its included specifications, *in hæc verba,* and alleges various breaches of the contract. It is set forth that about September 1, 1930, the plaintiff was informed by the contractor that the rear of the building had been excavated as required, the necessary new footings built in preparatory to moving and the necessary holes cut for loading of the building, and that he thereupon paid the contractor $1000. It is further alleged that about the

20th of September the contractor informed the plaintiff that the building had been moved to its new location, and that he thereupon made the payment of $3000 required; that on October 8, 1930, he was informed by the contractor that the water and plumbing had been taken care of as provided in the contract, and that he thereupon paid the further sum of $1000 to the contractor. It is further alleged that after the plaintiff had made these payments, totaling $5000 in all, he discovered for the first time that the preceding work had not been done according to the specifications, and that he thereupon prohibited the contractor from doing any further work and engaged another to complete it. It is alleged that it cost him $3666.22 to pay the second contractor to complete the work, and that it was not completed until sixty-seven days beyond the time when the first contractor agreed to finish it, whereby certain liquidated damages had accrued, making the total amount sought to be recovered $4871.22. Numerous specific breaches of the contract are set forth in the amended declaration, a detailed statement of which is not necessary to an understanding of the case nor to the present opinion.

A demurrer was interposed by the defendant, the United States Fidelity and Guaranty Company, which was sustained in the superior court. The plaintiff elected to stand by his amended declaration and appealed to the Appellate Court for the First District, where the judgment of the superior court was affirmed. The cause is brought before this court for review upon writ of *certiorari.*

The contentions of the defendant which were allowed to prevail in the trial and Appellate Courts were based upon a theory that no damages could be recovered by the plaintiff except such as might be deducted from any unpaid portion of the contract price and upon certain language used by this court in *Finney* v. *Condon,* 86 Ill. 78. It was there stated, in connection with the facts in that particular case, that the reserved per cent on a building contract is provided

as much for the indemnity of the surety as for the owner's protection; that equitably the surety is entitled to have the sum retained for his benefit, and that if the principal releases it without the consent of the surety the surety will be discharged. In that case, however, there was a finding that the payments had been properly made upon architect's certificates, and that although relatively they were in excess of what they ought to have been in relation to the full contract price, they were not necessarily in excess of eighty-five per cent of the work and materials actually performed and furnished, it being apparent that the contract had been taken too low. It thus appears that, notwithstanding any language used in that opinion, the case is not in point on the facts now before us and not necessarily controlling in this one. It remains for us to inquire whether the judgments arrived at are in consonance with the rules laid down by us in other cases which appear not to have been considered by the trial and Appellate Courts.

It is first contended by the defendant that a surety is a favorite of the law and is not to be held liable beyond his express engagement. Such cases as *Ryan* v. *Trustees of Shawneetown,* 14 Ill. 20, and others to the same effect, are cited, and with this general statement of an old rule we find no fault, except for the necessity of pointing out a certain exception to it. Since the advent of corporate sureties for hire it has been necessary to make a distinction between the gratuitous and paid surety, and this distinction has been recognized in this court. (*Gunsul* v. *American Surety Co.* 308 Ill. 312.) We find nothing in our previous decisions requiring us to place any strict or strained construction upon the language of this bond or contract for the purpose of limiting the obligation which the surety definitely assumed, but only find it necessary to determine the extent of that obligation.

In *Central Lumber Co.* v. *Kelter,* 201 Ill. 503, action was brought against sureties on a bond which, like the one

at bar, guaranteed the performance of a building contract. Among other defenses, it was insisted that the plaintiffs could not recover because they had not strictly complied with certain provisions in regard to making payments and certain other provisions for withholding twenty per cent of the contract price. In that case, as in this one, it was contended that if the owner had strictly complied with the provisions for withholding payments he could have protected himself against loss without resorting to the bond, and that the surety should therefore be released. On that point we said: "That, we think, is hardly a fair construction of the bond and contract. It would render the bond wholly unnecessary and of little or no benefit to the plaintiffs. If they were bound to protect themselves against loss occasioned by Rafferty's failure to perform the contract by withholding payments, then the security conditioned for his faithful performance would avail nothing."

In the later case of *City of Chicago* v. *Agnew*, 264 Ill. 288, an action was brought against a surety company, one of the obligors on a contractor's bond, for the enforcement of certain liabilities of the contractor, Agnew, in connection with the building of a tunnel. Among other reasons why it should be released, the surety company insisted that the contract had been violated to its prejudice by a failure on the part of the city to hold certain money in reserve until the work was finally completed and accepted. The money appears to have been paid on order of the commissioner of public works, approved by the city council, and to have been based upon estimates of the value of the work done without reference to the contract price, as in the *Kelter case, supra*. This was held not to be a sufficient defense and the *Kelter case* was referred to and quoted from with approval, the quotation being the same as that set forth above.

The defendant relies upon the wording of the following paragraph in the building contract: "It is further stipulated

between the parties that in case the party of the second part shall commit any breach of the covenants or agreements in the contract, specifications and plans, party of the first part shall have the right to terminate the contract, and engage another contractor to complete the job, and the party of the second part is to be liable for *any and all damages* and such damages are to be deducted from part of the contract price that should remain due party of the second part." It is urged that the provisions of this paragraph limit the owner's damages, in case of breach by the contractor, to such sum as remains unpaid. This argument overlooks several points. First, and most important, it must be observed that the clause itself does not so provide, but, on the contrary, definitely states that the contractor shall be liable for "any and all damages;" and second, the words relied upon are used in connection with the rest of the paragraph in which they are contained, which is permissive in its nature, conferring privileges on the owner but taking none from him. It is intended to clarify one certain right and remedy which the owner has in the event of substantial breach by the contractor, freeing the procedure from doubt and allowing the work to proceed. There is nothing in the paragraph which requires the owner to adopt this procedure nor which specifically limits his damages to such an amount as may remain unpaid. The adoption of such a construction would destroy the intention of the parties, and, as pointed out in the cases already cited, would render a bond unnecessary.

The liability of the defendant as surety, within the limit of the principal sum of the bond, is coëxtensive with that of the contractor, whose full and faithful performance has been guaranteed. It is conceivable that a breach might occasion damages equal to or greater than the entire contract price, and that such a breach might occur after all but the last payment had been made. It might even happen, through fraudulent concealment or latent defects, that

a breach might not be discovered until after all the money had been paid. If no recovery could be had on the bond under such circumstances, those words in the bond which purport to indemnify the owner against "all damages or forfeitures which may be sustained by reason of the non-performance or mal-performance on the part of the said principal" would be entirely nullified. Such a construction would be unreasonable and will not be approved.

It is our opinion that the amended declaration in this case stated a good cause of action and that the superior court of Cook county erred in sustaining a general demurrer to it, and that the Appellate Court erred in affirming the judgment of the superior court. The judgments of the Appellate and superior courts will therefore be reversed and the cause remanded to the superior court of Cook county, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*

Mr. JUSTICE WILSON took no part in this decision.