WILLIAM THOMAS, Trustee of the Bank of Illinois, Appellant, *v.* JOHN OLNEY *et al.*, Appellees.

#### APPEAL FROM HARDIN.

In order to create a liability upon a mortgage given to guarantee a loan, the loan should correspond with that recited in the mortgage.

THIS cause was heard at August term, 1854, of the Hardin Circuit Court, before PARRISH, Judge.

The appellant, Thomas, in his right as trustee of the Bank of Illinois, exhibited his bill in chancery in the Gallatin Circuit Court against the defendants, Olney · and others, to obtain a

decree for the payment of money secured by a mortgage executed by defendants to the Bank of Illinois, at Shawnee-town.

The venue of the cause was changed to the county of Hardin, where a demurrer to the bill was sustained and the bill dismissed, because, in the opinion of the court, the complainant had no right to a decree upon the facts charged.

The bill charges substantially,

That in 1837, upon an application by the citizens or corporation of Shawneetown, the stockholders of the Bank of Illinois agreed to loan the said corporation $20,000 for ten years, at six per cent. interest, payable annually, with ten per cent. of principal, to be used in paying for grading and paving with rock the river bank, opposite to or in front of said town, upon satisfactory security being given for the payment of principal and interest; the money to be advanced as required for use, and interest to be computed on the several sums from the date when paid to the order of the corporation.

That the terms and conditions upon which the money could be obtained being known to the trustees of the town, as well as to the proprietors and owners of lots situated on the river, the note or bond of the corporation was prepared to be executed for said sum of $20,000, whenever the loan was made. A mortgage was also prepared, dated 27th August, 1837, to be executed by as many of the owners of lots on the river bank as might be willing to the arrangement by which the corporation was to be bound to pay said $20,000, and the lots and parts of lots of those executing the mortgage were to be held as security for the said payment. The mortgage, as written, stated truly the contract for the loan, as finally agreed on by the directors of the bank.

That, on the 18th January, 1838, the trustees of Shawnee-town presented to the board of directors the note, prepared as aforesaid, payable 1st January, 1839; also the mortgage, executed by sundry proprietors of lots, dated 27th August, 1837, upon which the board acted, and made the loan upon the terms and conditions stated in the note and mortgage.

That, in pursuance of the contract of the loan, the bank opened an account with the trustees of Shawneetown, and paid the orders or checks of the trustees as the money was required for use. The first payment was made 19th February, 1838, and subsequent payments were made from time to time, until 26th January, 1839, when $3,000 was paid, which, added to previous payments, made $22,612 08; that for $20,000 only of said sum had the bank any security, except the liability of the trustees upon the orders.

That the money so loaned and advanced was used by said trustees of the town in grading and paving with rock the river bank, in front of the town, as provided for in the contract. It was so used under the direction of the trustees, and with the knowledge and approbation of the mortgagors. The actual cost of the improvement was $28,000 ; and a less sum would not have protected and defended the town against the invasions and encroachments of the river.

That by such improvement the river bank has been protected and prevented from falling in, and the mortgagors have enjoyed the benefit thereof. Without some such protection, the tier of lots on the bank of the river would very soon have fallen into the river ; and there were well-grounded fears that nearly the whole of the town would have been swept away.

At the time of the expenditure, the population of Shawneetown numbered at least 1,000 inhabitants. The tier of lots on the bank of the river, with the improvements thereon, were estimated to be worth $150,000. The taxable property in the town was worth $300,000. By a proper and reasonable exercise of the taxing power, the corporation could have paid the whole cost of the improvement within ten years. The wharfage or tax upon boats alone would have paid the interest and have kept the grading and paving in repair.

That at the date of last payment on loan, the accruing interest should have been paid ; and the trustees of the town stood indebted the $20,000, payable according to the contract as set out in the mortgage, but no such payment was then made.

That, on the 13th March, 1839, the bank agreed to loan to the trustees of Shawneetown $20,000, provided that amount should be required to continue the improvements of the streets and alleys of the town, to be drawn from the bank by the trustees, when needed for the payment of said work, and interest to commence on each sum from the time of the advancement thereof. This loan, it is charged, had no connection whatever with the former loan, and the only security taken for the same was the corporation of Shawneetown. The money was loaned to be used in improving the streets and alleys, whereas the money previously loaned was used in grading and paving with rock the river bank in front of the town. Upon the loan last made, only $15,540 36 was advanced and used.

That separate accounts were kept by the bank of the money advanced on said two loans.

An account was also kept with reference to the ordinary revenues of the town, the same being deposited as collected, and paid out on orders of the board of trustees.

About 1st January, 1841, the trustees of the town and officers of the bank made statements of the accounts between the two corporations ; and without any authority so to do, by or from the directors of the bank, the three accounts were added together, producing a balance against the trustees of the town of $38,317 39, for which sum the bond or note of the corporation was executed by the trustees, dated 1st January, 1841, payable 1st January, 1842, with six per cent. per annum interest until paid. The true consideration of the note was and is the money loaned upon the two contracts aforesaid, and a balance due the bank on account of deposits and disbursements of the revenue of the town ; the original bond or note for the $20,000 was, without authority of the directors of the bank, surrendered and destroyed.

The whole of the money loaned to the trustees of the town was used in making lasting and valuable improvements, and the inhabitants of the town who enjoyed the benefits could have paid the amount so used without any serious embarrassment. Their failure to do so aided very materially in bringing about the bankruptcy of the bank, which occurred in 1842.

The bill then sets out the assignment of the property, rights, &c., of the bank to Caldwell and Ryan, as assignees; the appointment of trustees and the conveyance of the estate, rights, credits, &c., to the complainant, as trustee.

That neither the corporation of Shawneetown or the inhabitants have paid the money loaned as aforesaid, nor the mortgagors. That the corporation of Shawneetown has ceased to exist ; no person to sue, &c. The defendants, mortgagors and those claiming property subject to the mortgage, are made parties, and decree prayed against each owner of mortgaged premises for the *pro rata* amount chargeable against the property, &c.

W. THOMAS and L. TRUMBULL, for Appellant.

FREEMAN, MONTGOMERY and OLNEY, for Appellees.

CATON, J. A bill was filed by the predecessor of the present complainant, to enforce the guarantee or mortgage, to which a demurrer was sustained by the circuit court, and its decision affirmed by this court. That case is reported in 14 Ill. 24. The averments of this bill are much more explicit than in that, and as is supposed by complainant, a new and a sufficient case is presented. A demurrer to this bill has also been sustained by the circuit court, and again must the decision below be affirmed here.

This bill shows that a meeting of the stockholders of the bank was held on the 29th of July, 1837, at which a resolution was adopted, authorizing the board of directors to loan to the trustees of Shawneetown, in their corporate capacity, for the term of ten years, the sum of twenty thousand dollars, at an interest of six per cent. per annum, payable annually, with ten per cent. of the principal, upon satisfactory security being given, etc. Accordingly the mortgage was prepared and executed on the 27th of August following, reciting the substance of the resolution of the stockholders, and creating a guarantee for the repayment of the loan and interest. This mortgage is set forth in the reported case referred to. Nothing further was done till the eighteenth of January, 1838. On that day the trustees of Shawneetown presented to the board of directors, their note or bond of that date, for twenty thousand dollars, payable on the first of January, 1839, together with the mortgage. The board of directors passed an order reciting that the trustees of Shawneetown had, in pursuance of the resolution of the stockholders, passed on the twenty-ninth of July, 1837, presented their note, stating the substance of it, which note they say is in accordance with a mortgage executed by sundry citizens of Shawneetown, to the bank, dated the twenty-third of August, 1837, as collateral security for the punctual payment of the interest and principal of said note of twenty thousand dollars, they order that the said note be discounted.

The only question which needs to be discussed is whether this loan was in fact made in pursuance of the terms of the mortgage? Whether the mortgagors ever undertook to guarantee such a loan as was made to the trustees of Shawneetown? The note presented was ordered to be discounted, and the order recites that the mortgage was presented as collateral security for the punctual payment of the interest and principal of the note. The note then expresses the terms of the loan, and that there might be no mistake as to the intention of the parties, the order of the board recites its substance, stating that it is for twenty thousand dollars, and is payable on the first of January, 1839. By presenting a note payable on the first of January, 1839, the trustees asked a credit only till that time, and the order of the board shows unequivocally that they intended to give a credit only till that time. The note expressed the contract between the parties, and a suit against the trustees to collect the debt would have been brought upon the note and not upon the mortgage. The town was debtor to the bank and not the mortgagors. They never agreed to assume any personal liability for any loan to the town, but pledged their property as collateral security for a loan to be made on a credit extending

from one to ten years. No such loan was ever made, for no such credit was ever given. The note was discounted and the loan was made on the eighteenth of January, 1838, and in less than one year from that time the whole amount became due, and the bank had a perfect right to sue the town upon the note and enforce the payment. No defense, at least so far as is shown by the bill, could have been set up to defeat the action upon the note. It is not even pretended that any mistake was made in drawing up the note by the trustees, or by the board of directors in reading it. On the contrary, the recitals in the order of the board of directors show conclusively that they perfectly understood the note according to its tenor. The mortgage was the instrument which was misunderstood. Its provisions were evidently misapprehended, and that too in its most important particulars, and to such an extent as almost to induce the belief that it could never have been read by the directors. But the guarantors are not responsible for any misapprehension of the terms of the guarantee by the bank. They made their mortgage and prescribed the terms of the loan, the re-payment of which it was to guarantee. They had a right to prescribe the terms, which no other parties had a right to change. No such loan as they agreed to guarantee was ever made, and they never agreed to guarantee the loan which was made. They were as much strangers to that transaction, as if they had never executed the mortgage. In the case of *Ryan* v. *Trustees of Shawneetown,* already referred to, this question was sufficiently examined, and it is quite unnecessary to go over the ground again. It was there held that in order to create a liability upon the mortgage, it was necessary to make a loan such as was recited in the mortgage, and to guarantee which, it was executed. This bill does not show that any such loan was ever made, but, on the contrary, it shows a loan of an entirely different character.

It was, however, insisted that the mortgage must be held good for one instalment of ten per cent. due on the first day of January, 1839. By reference to the mortgage it will be seen that none of the principal of the loan was to become due till one year from that time. The words of the mortgage are, " and paying the principal of said loan actually drawn in instalments of ten per cent. per annum, after the first day of January, 1839." They were to make annual payments of ten per cent. after the first of January, 1839, and not before. But even admitting that one instalment of the principal or some of the interest had happened to become due at the maturity of the note, still it would not make such a loan of money as the mortgagors agreed to guarantee. Without examining any other question raised upon the argument, we think the decree sustaining the demurrer should be affirmed. *Decree affirmed.*