Joseph H. Buttas et al., Appellees, v. Juddson Hotel Company et al. Lizzie Lee Judd and Edward S. Judd, Appellants.

Gen. No. 33,596.

Opinion filed March 11, 1930.

MAYER, MEYER, AUSTRIAN & PLATT, for appellants; M. PAUL NOYES, of counsel.

POPPENHUSEN, JOHNSTON, THOMPSON & COLE, for certain appellees; EDWARD R. JOHNSTON and JAMES W. HYDE, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

The bill in this case was filed to enforce mechanics' lien claims. The decree as to them is not questioned. Reversal is sought so far as the decree directs foreclosure of a trust deed of the premises as asked for in a pleading of certain defendants in the nature of an intervening petition or cross bill. The petitioners are Greenebaum Sons Bank and Trust Company, individually and as trustee, and Greenebaum Sons Investment Company, as holders of bonds issued by the Juddson Hotel Company, to secure which the trust deed was executed by said hotel company as maker of the bonds, and appellants, Lizzie Lee Judd, the owner of the fee, as mortgagor, and Edward S. Judd, her husband.

The controlling facts, all of which took place in 1922, are not in dispute. Early that year Mr. Judd (who acted for his wife in the negotiations), was approached by a representative of H. L. Stevens and Company, a copartnership, hotel builders and managers, with respect to organizing a building corporation to lease Mrs. Judd's property for 99 years and erect thereon a 10 or 11-story apartment hotel. After conferences (at one of which Mrs. Judd was present) with reference thereto and as to financing the construction, Greenebaum, Sr., president of the investment company, was approached with reference to a loan on the leasehold, but refused to consider one without a mortgage of the fee. Thereupon after terms and conditions of a mortgage loan were discussed among them it was verbally understood that they were to be embodied in a loan agreement to be signed by the hotel company as the borrower, and that Mrs. Judd would mortgage the fee to secure the loan, and the two instruments were subsequently executed.

The order of correspondence and events pertaining to the subject matter is as follows:

On March 20, (after conferences as aforesaid) Judd wrote a letter to H. L. Stevens and Company, offering on behalf of himself and wife, to lease the premises in question for 99 years to a building corporation, and stating therein that the lessee is "to procure a first mortgage loan not exceeding $1,000,000 in amount, the proceeds to be used in construction and furnishing of building according to plans mutually agreed upon, and Mrs. Judd and I will convey the fee simple title to secure payment of such mortgage loan, but are not to assume personal obligation for payment thereof," and that H. L. Stevens & Company would, at their own expense, prepare plans and specifications for the building and attend to the financing, construction and operation of the completed building, and that after making

the lease the lessor should receive 25 per cent of the stock of the company operating the building.

On April 24, Stevens & Company wrote a letter to the investment company outlining what it would do with reference to the project based on a building at a cost of $800,000, and a cost of $175,000 for furniture and furnishings. It proposed a first mortgage loan of $890,000 (valuing the site at $150,000), that it would make a cash investment of $20,000, design and supervise the construction and equipment of the building, guarantee the owner of the property that the cost of the building would not exceed $800,000, and if it did, Stevens & Company would assume and pay such excess, and would also guarantee the trustee completion of the building free from liens of any kind.

Under date of May 18, acknowledged June 27, the trust deed was executed by the hotel company and Mr. and Mrs. Judd as aforesaid, conveying the premises to said trust company as trustee, and the leasehold interest therein, to secure said hotel company's indebtedness to the holders of 1,700 bonds of said company aggregating the principal sum of $875,000. The deed contains the usual protective provisions and covenants and those for foreclosure by the trustee in the event of breach by the maker or mortgagor of any of their respective covenants. Specific provisions therein will be referred to later.

On May 27, Stevens and Company entered into a written contract with the Juddson Hotel Company for constructing, furnishing and equipping the proposed Juddson Hotel, and guaranteeing that the cost of the building, without furnishing and equipment, if constructed in accordance with preliminary sketches and detailed plans to be thereafter prepared by them, would not exceed $800,000.

Under date of June 1, 1922, acknowledged June 27, the 99-year lease referred to was also executed by Mrs.

Judd and her husband, demising the premises to the hotel company subject to the terms of the trust deed. It provided that the hotel company would within 60 days commence the erection of the building on the premises substantially in accordance with the plans and specifications and complete the same by July 1, 1923, free and clear of mechanics' and other statutory liens.

On June 12, said hotel company and the investment company entered into a written agreement in the form of a proposal by the former to the latter, and an acceptance thereof. After reciting therein the ownership of the land by Mrs. Judd, her interest in the hotel company, the value of the land and proposed improvements, and the requirement of $875,000 for the construction and equipment, the instrument proposed the execution and issue of a series of bonds by said hotel company aggregating said amount, bearing interest at the rate of 7 per cent from July 1, 1922, and specifying their respective amounts and dates of maturity. The agreement then stated that the hotel company would cause Mrs. Judd and her husband to execute a trust deed to the trust company as trustee of the premises and the building to be erected thereon, to secure said series of bonds, and that it would give a chattel mortgage on all the furnishings, etc. The agreement then provided that the hotel company would sell to the investment company said issue of bonds at 92 per cent of their face amount, and pay certain preliminary expenses, to wit, the cost of abstracts of title for a mortgage guaranty policy, engraving, etc., the bonds and coupons, printing the trust deed and chattel mortgage, attorneys' fees and other usual incidental expenses, and that the investment company might retain out of the purchase price of the bonds an amount sufficient to pay interest accruing the first year and apply the same to the payment thereof as it accrued.

The agreement also provided that no part of the purchase price of the bonds need be paid out until the investment company was satisfied that funds had been provided by the hotel company sufficient to clear all liens prior to the lien of the trust deed and chattel mortgage, and that the investment company was not obligated to pay any part of the purchase price until satisfied through a mortgage guaranty policy that the deed was a first lien upon the real estate, and that if the hotel company failed to carry out any of the provisions of the agreement it would, in addition to reimbursing the investment company for moneys expended and expenses incurred, as aforesaid, pay it $5,000 as liquidated damages to compensate the investment company for its loss, and upon such reimbursement the agreement should be terminated.

In the latter part of July and first part of August detailed plans were prepared by Stevens and Company, the architects and contractors, for the building, and contracts were let for the excavation, shoring and foundation. The work thereon started July 17, and continued until in December when construction ceased and was never resumed. The hotel company expended on that work about $20,000, all the money it had, no part of which was advanced by the investment company. It then, about October 1, applied to the investment company to advance money for building construction. A controversy then arose between the hotel company and the Stevens firm on one hand, and the investment company on the other, growing out of changes made in the plans in the meantime that would require an estimated additional cost of about $77,000 over the net proceeds of the loan available for construction purposes, and about October 10, 1922, the investment company refused to make any advances for the building unless the hotel company or the Stevens firm should first provide the necessary additional

funds. Conferences were thereupon had, in some of which Mr. Judd took part, but they resulted in no further arrangements and the construction work ceased December 2 because of lack of funds.

On August 15 the investment company placed on its books to the credit of the hotel company the sum of $805,000, being 92 per cent of the face amount of the bonds, the agreed purchase price which is $70,000 less than their par value. While the master refers to said $70,000 as a "commission" on the loan, there is no reference to a "commission" in the contract for the loan. In reality it represents the "discount" from the par value of the bonds at which the purchase was made.

Prior to that time the investment company had paid out in preliminary expenses, provided for as aforesaid, the sum of $7,475.25.

On and after August 21, the investment company had sold all of the issue of bonds except $10,000 thereof. Having determined on October 10 that no money would be paid out on the loan it thereafter bought them back, paying what interest would have accrued thereon, which, after deducting interest it had allowed on its back credit as aforesaid, amounted to $23,628.33.

On October 16, the trust company served the hotel company and Mrs. Judd with notice of defaults. The bill to enforce mechanics' liens was filed March 8, 1923, and the intervening petition, December 21, 1926.

The decree confirms the master's report and findings that the investment company has a lien on the premises under the trust deed for said sum of $7,476.25, with interest at 5 per cent from August 4, 1922, and costs of suit; for its "commission" of $70,000 with interest thereon at 5 per cent from August 15, 1922, and for interest on said bonds paid out as aforesaid, in net amount of $23,628.33 with interest thereon at 5 per cent per annum from January 1, 1923, the date the first instalment of interest became due on said bonds.

Upon the above state of facts petitioners contend that said bonds are the valid and outstanding obligations of the maker for which the investment company paid the maker consideration, and that as such they are secured by the trust deed.

Appellants contend that the trust deed cannot be enforced against Mrs. Judd to charge her land with duties and obligations of the hotel company, created only under the loan agreement to which she was not a party and which was in no way referred to in the trust deed, and because no proceeds from the funds were used in the construction upon the premises of the apartment hotel building, as contemplated by the trust deed, and therefore the trust deed was without consideration as to her.

The real question, under the foregoing state of facts, is not what are the obligations of the hotel company under its agreement for the loan, but whether in view of these facts and the terms of the trust deed a foreclosure thereof as against Mrs. Judd will lie. To determine that question we must look not to the loan agreement, to which Mrs. Judd is not a party and which is in no way a part of the trust deed nor capable of being read into it, but to the trust deed alone whereby she pledges the fee to the premises, not to secure the carrying out of the terms of the loan agreement, but to secure payment of the bonds issued pursuant thereto, only however upon such terms and conditions as are prescribed in the deed.

The parties to the deed are the Juddson Hotel Company as "maker," party of the first part, Mrs. Judd as "mortgagor;" party of the second part, and said trust company as "trustee," party of the third part. It recites that the "maker" is justly indebted to the legal holder or holders of the 1700 bonds and that 'the proceeds of the sale of the said bonds are to be used by the maker to pay for the construction, upon the premises owned by the mortgagor hereinafter de-

scribed, of an apartment hotel building, with necessary machinery, fixtures and equipment therefor as provided in section 1 of article II hereof.'' In some of the articles the maker and mortgagor covenant separately.

Said article II contains covenants and agreements by the maker only, and said section provides in substance that the maker will without unnecessary delay cause to be constructed and completed upon said premises the 10-story apartment hotel building provided for in the plans and specifications theretofore filed with the trustee, and in case of the maker's failure to do so the trustee may at its own election construct and complete the erection of the building, etc. Article III provides that on certain steps being taken by the holder or holders of ''outstanding'' bonds in case of default to pay interest when it becomes due and payable or in case of a breach of any of the covenants by the maker or mortgagor and a continuance of those conditions for a certain time the total principal sum evidenced by all the bonds then ''outstanding and unpaid,'' shall thereupon become due and payable at once.

The intervening petition sets up that prior to December 1, 1922, the investment company had sold some of the bonds as aforesaid to innocent purchasers in whose hands they were ''outstanding,'' that it credited the hotel company with ''$875,000'' pursuant to its directions and had paid out the various sums as above enumerated; that within three months after abandonment by the hotel company of the further construction of the building it repurchased all of the bonds so sold for their face value and accrued interest ''and thereupon succeeded to the rights of the holders of the bonds from whom it purchased''; that the hotel company and Mrs. Judd failed to comply with and made default under the terms and conditions of the trust deed in failing to complete the apartment building, in abandoning the erection thereof, in not keeping the hotel company alive

by making reports required by the State of Illinois, by nonpayment of taxes for 1922 and subsequent years, and suffering mechanics' liens to be filed against the property, and that there is now due and unpaid the aggregate sum of the aforesaid items with interest, etc.

So far as the right to relief asked for is predicated upon abandonment of construction of the building, it appears that such abandonment was a necessary consequence of the refusal of the investment company to make any advancement upon the loan for the construction. In other words, it clearly appears that it refused to consummate the loan and in effect rescinded the agreement therefor before there was an abandonment and not because of an abandonment but because of a breach of the borrower's contract in respect to the plans according to which the building was to be constructed.

And so far as the pleading is predicated upon the theory that the investment company stands in the position of successor to the rights of innocent bondholders from whom it repurchased the bonds, it is manifest that the company did not buy them back for investment or without notice of appellants' equities but evidently for its own protection against the embarrassment and unpleasant consequences of its refusal to consummate the loan. When it rescinded the contract, therefore, it would appear that its position with respect to appellants was practically the same as if it had never attempted to sell them.

The defaults of which the maker and mortgagor were given notice and on which the foreclosure proceedings were based, are: (1) The failure to comply with said section 1, article II as to the maker's delay to construct the building provided for in the plans and specifications filed with the trustee and abandoning the erection thereof, and (2) in suffering mechanics' liens to be filed.

It will be noticed that the foreclosure is not predicated upon default to pay the bonds or interest thereon. When the investment company refused to go on under the loan agreement not one of those bonds or any interest thereon had become due under their terms or those of the trust deed. We think, therefore, the interveners' rights must be viewed in the light of the facts as they stood at that time; and that is practically the theory of their petition and that of the master's report, for his findings are in effect that the investment company is entitled to a lien for expenses it had been put to up to that time by reason of the Hotel Company's breach in consequence of which it was justified in refusing to ''open up the loan and pay out the avails of the loan,'' and also a lien for the loss of its ''commission'' and for the liability it incurred for interest on the bonds it had sold—manifestly in expectation of its consummating the loan. In other words, the relief sought by the investment company is to be placed back where it stood when it refused to consummate the loan. It will thus appear that it is sought to establish a lien under the trust deed for what was merely in the nature of damages for the hotel company's breach of contract —a contract to which the owner of the premises is in no way a party. And it may be said here that we do not regard any alleged conversations which Mr. Judd had preliminary to the execution of the trust deed as competent or material to the determination of Mrs. Judd's liability under it. So far as she is concerned they were merged in the trust deed to which alone we must look for determining her liability.

And, too, it is somewhat difficult to reconcile the theory of a default in failing to go on with the construction of the building with the unquestioned fact that the investment company prevented such failure by not advancing the money for that purpose, as was clearly contemplated by the contracts. In other words, the

investment company's right of action seems to be for expenses it had been put to because of the hotel company's breach of its contract in changing the plans and specifications. It is upon that breach that it acted and not upon anything covenanted to be done, or omitted to be done, by the mortgagor. It may have a right of action against the hotel company under the loan agreement which expressly provided that if that company failed to carry out any of the provisions of that agreement it would in addition to reimbursing the investment company for money expended and expenses incurred, as aforesaid, pay it $5,000 as liquidated damages to compensate the investment company for its loss. But it is another question whether under the circumstances, where the investment company has agreed to make a loan and advance money thereon for the specific purpose of constructing the building and has refused to advance a dollar for that purpose and has thereby prevented the hotel company from going on with the construction, it can enforce a foreclosure of Mrs. Judd's premises under the trust deed which in effect covenants that the proceeds of the loan it purports to secure shall be used in such construction. That such is the clear import of the trust deed, though the provision is not in the express words of a covenant, can hardly be questioned.

It is perfectly obvious that Mrs. Judd had nothing to gain but everything to lose in pledging the fee of her land to secure such a large issue of bonds unless the contemplated building was erected thereon. It was evidently for her protection that such provision was inserted in the trust deed. It was expressly understood that she was not to assume personal liability on the bonds, and she did not. She merely pledged her property as security therefor on the conditions and terms of the trust deed. Her relation was that of a surety. (*Price v. Dime Savings Bank*, 124 Ill. 317, 324; *Ryan*

*v. Shawneetown,* 14 Ill. 20.) And liability as such cannot be enlarged beyond the express language of the instrument creating the liability. (*McCartney v. Ridgway,* 160 Ill. 129, 159, 160.) Nor do we think the fact that Mrs. Judd was desirous of having the hotel company erect a building on her premises or contemplated taking stock in the company that leased the premises for that purpose, can be regarded as in any way enlarging her obligations under the trust deed, or as modifying its express terms.

As we view the case, therefore, the salient facts are: The hotel company seemingly breached its contract for the loan in changing the character of the plans of the building contemplated both in the agreement for the loan and the trust deed. When this was disclosed by the submission of completed plans to the investment company, and the interested parties failed to agree upon a modification of the plans or to provide for the additional expenditure the change would entail, the investment company then refused to advance a single dollar on the loan for construction purposes and in effect rescinded or failed to consummate its agreement for the loan. Conceding that it had a right to do so because of said breach, it then had a remedy for damages against the hotel company for the breach as expressly provided in the loan agreement.

But whatever damages it may have been entitled to thereunder is not the test of Mrs. Judd's liability. They may include the preliminary expenses, said "commission," and resultant expenses, including the interest item aforesaid, in getting back the sold bonds. But Mrs. Judd did not agree to pay any of them. Her trust deed expressly contemplated future advances from the proceeds of the loan to be used in the construction of the building. Otherwise the loan was of no material benefit to her and there was no consideration moving to her for executing the trust deed. The

sale of the bonds was for $805,000. The proceeds therefrom were never made available for the purpose contemplated by the trust deed. As stated by the master the investment company refused "to open up the loan." Not one dollar thereof went into the building. Placing on the investment company's books a credit to the hotel company of $805,000, the net proceeds of the sale, was a mere bookkeeping entry. Neither the discount of $70,000 on the sale nor the preliminary expenses paid out under the loan agreement nor the interest paid out in taking back the bonds can be construed as having been used in the construction of the building within the intendment of the trust deed. So far as Mrs. Judd's liability is concerned, the situation is the same as if without a breach of the loan agreement by the hotel company the investment company had, after paying said preliminary expenses as therein provided, concluded to abandon and not consummate the agreement for the loan. No one can question that in such a case the consideration for the trust deed would have failed.

Had the loan been actually consummated and some part of it actually gone into the structure and subsequently there had been defaults within the provisions of the trust deed the case might present a different aspect. But under the circumstances, whatever claim the investment company may have against the hotel company to be reimbursed for damages it has sustained by reason of the latter's breach of contract, it cannot be said that the items constituting them are "proceeds from the sale of the bonds," or that they were used in the construction of the building as contemplated by the trust deed.

There was a very similar state of facts in the case of *Freutel v. Schmitz,* 299 Ill. 320. There Mrs. Zemon and her husband conveyed by two trust deeds two certain lots owned by her to secure future advances for erect-

ing a building on each. Shortly afterwards she and her husband executed a quitclaim deed of the properties to Freutel. As to liabilities under the trust deeds he stood in their shoes, and later filed a petition to cancel the deeds as clouds upon the title claiming that as no money was ever advanced on the loan there was no consideration for the deeds. Schmitz who had contracted to make the loan claimed interest on the same for the period it had been set apart (as he claimed) for that purpose, and also the recording fee and certain preliminary expenses including commissions for the loan, based upon an alleged verbal agreement with the husband to pay the same. The examiner to whom the matter was referred reported that the trust deeds were null and void, that no consideration was given therefor, that they should be canceled of record, and that while Schmitz was entitled to recover from the husband the amounts claimed, he had no lien upon the property for them and recommended a disallowance of Schmitz' claims. The chancellor decided otherwise and allowed them. The Supreme Court sustained the examiner. In respect to said claims and the transactions on which they were based there is a close analogy in that case between the position of Mr. Zemon and the hotel company and that of Freutel and Mrs. Judd. There, as here, the trust deeds were given to secure money to be advanced. The notes secured by the trust deeds were signd by both Mr. and Mrs. Zemon. The court said that while Freutel took their place as makers of the trust deeds, so far as any lien was created thereby, he assumed no personal indebtedness of the makers of the trust deeds not secured thereby. It held that while Schmitz charged himself with the amount of the loan and credited the Zemons therewith on his books "it was only a book entry," that no money was actually set aside and none was ever advanced, and that if Mr. Zemon agreed to pay a commission for procuring the

loan it was not secured in any manner by the trust deeds. Stating the law applicable it said: "If there is no mortgage debt or obligation in existence there is nothing for the mortgage to operate on, and the lien begins only when money *is advanced or the contemplated debt comes into existence in the course of dealing between the parties. The lien is measured by the extent of the advances and the amount of the debt.*"

There is such a close analogy of facts in the two cases as to make practically all that was said in that case applicable to the facts here. And so we think it may be said here, as was said in the case of *Thomas v. Olney,* 16 Ill. 53: "The only question which needs to be discussed is whether this loan was in fact made in pursuance of the terms of the mortgage." Here, as there said, the mortgagors never agreed to assume any personal liability for the loan but pledged their property as collateral security therefor, and as guarantors had the right to prescribe the terms of the guaranty, and no such loan as they agreed to guarantee was ever made.

As to failure of consideration pleaded by the Judds, the facts in some respects are like those in *Pittsburgh Plate Glass Co. v. Kransz,* 291 Ill. 84. There notes secured by a trust deed were given to secure the balance of a contract price for completing a building. The consideration therefor was the completion of the building. The work thereon was abandoned. It was held that the consideration for the notes failed. While the consideration of the trust deed here was not for the completion of the building but that the proceeds from the loan should be used in the construction thereof, they not having been so used the consideration for the trust deed failed.

For the reasons above stated the decree is reversed, in so far as it awards any relief to the intervening petitioners, Greenebaum Sons Investment Company

and Greenebaum Sons Bank and Trust Company, individually and as trustee, and the cause is remanded to the circuit court, with directions to dismiss the intervening petition of said petitioners for want of equity at their costs.

*Reversed and remanded with directions.*

SCANLAN and GRIDLEY, JJ., concur.