## James L. Nicholson et al., Appellants, v. Nicholson Coal Company et al., Appellees.

### (Not to be reported in full.)

Appeal from the Circuit Court of Washington county; the Hon. Louis Bernreuter, Judge, presiding. Heard in this court at the March term, 1914. Affirmed. Opinion filed November 9, 1914.

### Statement of the Case.

Bill by James L. Nicholson, Charles E. Dallam, Elizabeth A. Brown and others against the Nicholson Coal Company, M. M. Stephens and others to foreclose three mortgages.

On October 15, 1912, and for some time prior thereto, the Nicholson Coal Company, of which John B. Brasher was president, owned and operated a coal mine near Nashville, Illinois, and held by deed or lease the coal rights connected with some five hundred acres of land and two town lots and also owned a large amount of mining machinery, buildings and articles of personal property, used in carrying on the business of mining. At the time mentioned there were three mortgages on all of said property, one to Charles E. Dallam for $22,000, another to Elizabeth A. Brown for $11,700, and the third to William Kimmons for $1,400. Brasher was anxious to sell the mine, and in that connection called upon certain attorneys who interested M. M. Stephens, a client of theirs, in the matter. Brasher and Stephens were brought together and the matter of the sale discussed by them. Afterwards, on said October 15, 1912, the two met in the office of Johnson and Owen, when Stephens said he was not ready to consider the purchase of the mine but Brasher, who had a payroll for his mine which he was unable to meet, appealed to Stephens to loan him money to make these payments and, after some conversation, Stephens

loaned him $2,400 for that purpose and received a note for that amount from the Company, executed by Brasher as president. At the same time a warranty deed for all of the above property was executed by the Company by Brasher, its president, conveying the same to Stephens, said premises being declared in said deed to be free from all incumbrances, except the first two above mentioned. In connection with the same transaction and at the same time, the following memorandum was drawn up and signed by Stephens:

"This memorandum witnesseth: that there is now pending between the Nicholson Coal Company and M. M. Stephens, acting as trustee, for himself and others, a proposition for the sale, by the Coal Company, of its mining property and equipment at Nashville, Ill., and that whereas it has been deemed advisable to have an expert examine the Coal Mine and the coal mining property and equipment before completing the transaction and it is necessary to provide the funds this day to said Nicholson Coal Company with which to make the payroll this day maturing, amounting in the aggregate to Twenty Four Hundred (2,400) Dollars, and whereas the said M. M. Stephens and associates have advanced said money and have taken a note of the said Nicholson Coal Company therefor, bearing even date herewith:

"Now, therefore, it is understood by and between the respective parties that in case the report of the expert is favorable, that the sale of the said property to the said M. M. Stephens as trustee shall be absolute and all further and necessary deeds, conveyances, instruments or contracts to that effect will be executed by the Nicholson Coal Company, and that the estate in fee simple and in perpetuity will be vested in the said M. M. Stephens upon the terms hereinafter stated, and that on the other hand in case the report of the expert is unfavorable as to the said coal mine and coal mining properties, and the said M. M. Stephens shall so elect, that then, and in this event, the advance of the above named sum shall be considered merely a loan, payable according to the terms of said note, and upon

the repayment of the same by the Nicholson Coal Company at maturity, said M. M. Stephens will relieve all claims to said property and the same shall reinvest in said Coal Company. It is further understood that if said report of the expert on said coal mine and coal mining properties is favorable, and the sale is consummated that then, and in that event, the said M. M. Stephens, Trustee, is to take the same subject to all existing liens and subject to the payment of the outstanding debts of the said Nicholson Coal Company (inclusive of the advance hereinabove referred together with the payroll maturing October 31st, 1912) all amounting in the aggregate to not to exceed the sum of Fifty Thousand ($50,000) Dollars and in addition thereto the grantor or its nominees shall receive Twenty Thousand ($20,000) Dollars worth of stock in the Corporation proposed to be organized to take over said property.

Dated St. Louis, Missouri, this 15th day of October, A. D. 1912.

M. M. Stephens.''

Later, Stephens again advanced $2,400 to meet another fortnight payroll and took a note of the Company therefor, and at another subsequent time Stephens and Elizabeth A. Brown signed a note for a like amount for another payroll, when said Elizabeth A. Brown took charge of the mine to collect the amounts so advanced.

Stephens thereafter had some connection with the operation of the mine, and he testified that while Brasher said he would turn over the mine to him it was never in fact so turned over and that he never had possession of the books or keys.

The bill filed by complainants set out the indebtedness referred to in the three mortgages, showing the amount unpaid thereon, stating that appellants owned a part of said indebtedness and that the same was due by the terms thereof, and also set forth in full the above memorandum signed by Stephens. It further

alleged that a favorable report was made upon said mine and the value of said property and thereupon Stephens accepted and caused to be recorded a deed to him for said property from the Nicholson Coal Company and took possession of the property and that he still holds the same; that complainants were informed that said Stephens denied his liability under said contract of purchase, and contended that the deed taken by him was only given to secure a loan and was in fact a mortgage. The bill prayed for foreclosure of the mortgage and that if the debts due each of the complainants should not be paid by a day to be named by the court, that the premises be sold and the proceeds applied, first to the payment of the costs and of said mortgage liens and the surplus to the payment of the debts owing to the other complainants; that if the property failed to bring a sufficient amount to pay complainants in full, judgment be entered in favor of each of the same against said Stephens for any deficiency.

Defendant Stephens filed his answer denying the material allegations of the bill and charging fraud and misrepresentation made by Brasher. He also filed his cross-bill setting up the execution and delivery of the deed and alleging that the agreement was, that the same was to be treated in the nature of a mortgage to secure the amounts advanced by him, and it prayed that the said deed might be decreed to be a mortgage and foreclosed and that a receiver might be appointed. A decree was entered, ordering the master in chancery to sell the property, and therein all the conflicting rights, interests and equities of the parties were reserved for further hearing and disposition by the court and the cause was referred to the master in chancery to take proof and report his conclusions and findings and recommend a decree. Afterwards the property was sold by the master in chancery for $4,000, the sale approved and deed for the same executed. The amount received was consumed by costs and fees and two judgments against the receiver and nothing was

left to apply on the mortgage indebtedness.    The master afterwards took the evidence as to the conflicting interests of the parties to the suit and reported the same, together with his conclusions to the court.

Objections were filed before the master to his report and overruled and later, having been filed as exceptions, were overruled by the court.    The court thereupon entered a decree approving and in accordance with the master's report and finding that by the memorandum entered into by appellant he had the right to elect to purchase said property if the same was acceptable to him or, if not acceptable, that said deed might be treated as a mortgage for the indebtedness due him from the Coal Company; that in case he elected to purchase the property he was to take the same subject to all existing liens and subject to the payment of the outstanding indebtedness of the Company, the same however, not to exceed $50,000, including the mortgages; but that said Stephens did not assume or agree to pay any part of said outstanding indebtedness, except two payrolls of $5,000; that the deed to Stephens is a constructive mortgage upon which there is due the sum of $11,372.28, which is a lien on said property subject to the prior mortgages and judgment liens named in the prior decretal; that judgment should be and is rendered in favor of said Stephens and against said Nicholson Coal Company for said sum of $11,372.28, and that as to $4,800 of this amount, represented by the promissory notes of said Company, judgment is also rendered against said John B. Brasher. From the decree so entered, this appeal is prosecuted.

WATTS & MAXWELL, for appellant.

C. PORTER JOHNSON and MALCOLM D. OWEN, for appellee Stephens.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Krisman v. Johnston City & Big Muddy C. & M. Co., 190 Ill. App. 612.

## Abstract of the Decision.

1. MORTGAGES, § 226*—*when grantee not presumed to have assumed payment of debt.* It will not be presumed that the grantee of real estate subject to a mortgage indebtedness has undertaken to pay off such indebtedness and relieve the grantor of his obligation to make such payment, unless it is plainly provided in the instrument of conveyance accepted by the grantee that he shall pay such indebtedness, or it is otherwise so provided by contract to which he is a party.

2. MORTGAGES, § 226*—*when parol evidenc ʳdmissible to construe agreement as to assumption of debt.* Paʳ ʻdence held admissible to explain the language of a memoₗ agreement with reference to whether the party signing thₑ ʳeed to pay incumbrances on real estate in case he purchaₗ

3. MORTGAGES, § 33*—*parol evidence.* Parol eviᵤ ₗs-sible to show that a deed which is absolute in form , intended to be an equitable mortgage.

4. MORTGAGES, § 222*—*when memorandum agreemenᵤ oes not assume payment of mortgage indebtedness.* A memorandum agreement entered into by a person considering the purchase of real estate, *held* not to show, when considered with or without the deed, any intention on his part to assume payment of a mortgage indebtedness against the property in case he should take the property.

5. CONTRACTS, § 206a*—*when third party entitled to enforce contract.* Before a third party can acquire a right which he can enforce in a contract between others, he must be a party to the consideration or the contract must have been entered into for his benefit.