The Danville Hotel Company for the use of B. Stevenson, Appellee, v. Charles Benson, Inc., and The Aetna Casualty & Surety Company, Defendants. The Aetna Casualty & Surety Company, Appellant.

Gen. No. 34,586.

Opinion filed June 22, 1931.   Rehearing denied July 7, 1931.

DENT, DOBYNS & FREEMAN, for appellant; LOUIS L. DENT and SEWARD H. BOWERS, of counsel.

A. S. and E. W. FROEHLICH, for appellee.

Mr. Justice Kerner delivered the opinion of the court.

Action was brought by plaintiff, The Danville Hotel Company, a corporation, for the use of B. Stevenson, against Charles Benson, Inc., a corporation, and The Aetna Casualty & Surety Company, a corporation, to recover for damages alleged to have been sustained by the beneficial plaintiff, B. Stevenson, as a result of a breach of conditions of a contractor's bond executed by Charles Benson, Inc., as principal, and The Aetna Casualty & Surety Company, as surety, to The Danville Hotel Company as owner. Charles Benson, Inc., was never served with summons and did not appear and the cause proceeded to trial against The Aetna Casualty & Surety Company alone. The case was tried before the court without a jury, and a judgment was rendered in favor of the plaintiff for $15,475, from which the defendant, The Aetna Casualty & Surety Company, appealed.

The material facts are that Charles Benson, Inc., a corporation, was a general contractor for the construction of the Wolford Hotel at Danville, Illinois. November 11, 1925, The Danville Hotel Company entered into a contract with Charles Benson, Inc., whereby the general contractor was to construct the Wolford Hotel for $822,699, and to furnish all of the materials and perform all of the work shown on the drawings and described in the specifications for the Wolford Hotel; the work to be commenced immediately and to be completed before the expiration of eighteen months from the date of the contract, and on May 3, 1926, Charles Benson, Inc., as principal, and the defendant, The Aetna Casualty & Surety Company, as surety, executed a bond in favor of The Danville Hotel Company, as owner, to insure the performance of the contract between Charles Benson, Inc., and The Danville Hotel Company. After reciting the fact that Charles

Benson, Inc., and The Danville Hotel Company entered into said contract for the construction of the Wolford Hotel, on November 11, 1925, the bond recited that:

"Now, THEREFORE, the condition of this obligation is such that if the Principal shall faithfully perform the contract on his part and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the Owner from all cost and damage which he may suffer by reason of failure so to do, and shall further reimburse and repay the Owner all outlay and expense which the Owner may incur in making good any such default, and shall pay all persons who have contracts directly with the Principal for labor or materials, then this obligation shall be null and void; otherwise, it shall remain in full force and effect."

November 27, 1925, B. Stevenson entered into a contract with Charles Benson, Inc., whereby Stevenson agreed to furnish the labor and material for the heating work in the Wolford Hotel for $40,000, and thereafter did furnish such material and labor and fully completed his contract on April 15, 1927, and there remained due and unpaid to him $13,409.24 with interest at five per cent per annum for May 15, 1927. In order to finance the building of the hotel The Danville Hotel Company executed a mortgage to secure a $700,000 bond issue, and Caldwell & Company of Nashville, Tennessee, underwrote the issue, and as the work progressed the general contractor would obtain payments on its contract, from Caldwell & Company, based on architects' certificates, plus waivers of lien from the various subcontractors and materialmen. March 12, 1927, Charles Benson, president of Charles Benson, Inc., had a conference with one Elmer C. Lind, an employee of B. Stevenson, and gave Lind two promissory notes aggregating $13,409.24, and Lind

gave Benson a waiver of lien which stated that B. Stevenson in consideration of one dollar waived any and all liens for labor and materials furnished upon the Wolford Hotel; at this conference Benson said there was a balance due from Caldwell & Company of $70,000; and that Caldwell & Company would forward to Stevenson the balance due him; that it was necessary that he (Benson) have the waiver to present to Caldwell & Company in order to obtain Stevenson's money, and it was upon these assurances that Lind gave Benson the waiver of lien and obtained the two notes. The waiver of lien was mailed to Caldwell & Company but Stevenson did not receive the balance due him. Neither Charles Benson, Inc., nor Stevenson ever received any payment from Caldwell & Company or the Danville Hotel Company after the execution of the waiver of lien. When the Wolford Hotel was completed, Stevenson and several other subcontractors had not been paid in full. The subcontractors, but not Stevenson, filed and established claims for mechanics' liens against the hotel. Subsequently The Danville Hotel Company went into voluntary bankruptcy and the property was sold. B. Stevenson never filed a claim for a mechanic's lien and was not adjudged to have a right to share in the assets of the bankrupt.

The principal question presented for decision is whether or not the obligation of the bond sued on covers the claim of Stevenson. The defendant contends that the bond was executed for the sole benefit of The Danville Hotel Company and not for Stevenson; that Stevenson was not a party to the execution of the bond, his name not appearing therein, and that he did not furnish any consideration for the bond and did not enter into his contract in reliance upon it.

The bond in the instant case required the general contractor to faithfully perform its contract with The Danville Hotel Company, furnish all the materials described in the specifications for the Wolford Hotel,

satisfy all the claims and demands incurred for the same, fully indemnify and save harmless The Danville Hotel Company from all cost and damage which it might suffer by reason of failure so to do, and fully reimburse and repay the owner all outlay and expense which it may incur in making good such default. From an examination of the provisions of the contract and bond, we have reached the conclusion that material-men furnishing materials for the Wolford Hotel under the contract between Charles Benson, Inc., and The Danville Hotel Company are sufficiently designated as a class for whose benefit the condition requiring the general contractor to pay for material was inserted in the contract and that it was meant to cover the claims of those furnishing such materials, where such persons had contracted directly with the general contractor. There are a large number of authorities to support our conclusion, in a number of which we find bonds which contain the precise language employed in the instant case, and these authorities, in our opinion, are flanked by sound legal reason. It is a cardinal rule of construction that, whenever possible, all the terms of a written instrument will be given effect, for parties do not ordinarily insert meaningless terms in their contracts; and applying this rule it seems clear to us that the condition of the bond in the instant case, when fairly interpreted, undertakes to cover not only any loss sustained by The Danville Hotel Company, but also any loss suffered by those who furnished labor or materials directly to the principal in the bond, and such an interpretation renders the defendant liable, and plaintiff was entitled to maintain an action directly against the defendant. In the case of *Byram Lumber & Supply Co. v. Page,* 109 Conn. 256 (146 Atl. 293), the court said:

"Faithful performance of the contract by the principal contractor, satisfaction of all claims and demands incurred for the same, full indemnity to the owner for

all costs and damages by reason of the failure to keep these stipulations, and reimbursement of the owner for all expense in making good any such default, and then the provision, upon which reliance is placed in this case, that the principal contractor 'shall pay all persons who have contracts directly with the principal for labor or materials.' In the first place it is at once apparent that the clause quoted adds nothing to the obligations before stated as regards the right of the owner to recover upon the bond; if any person furnishing labor or materials under contract with the principal in the bond had a claim against the owner, it would be the duty of the obligors under the stipulations preceding the one quoted to satisfy it, or, if the owner had paid the claim, to reimburse him.

" . . . there is significance in the fact that in the particular clause here in question those 'who have contracts directly with the principal' are singled out for special regard; if protection for the owner alone was in the minds of the parties, it is difficult to see why this should be done; his concern would be to guard against all claims of whatsoever nature which might be made upon him, without regard to the way in which they had arisen, while this clause is made to turn upon a direct contractual relationship with the principal."

In *Forburger Stone Co. v. Lion Bonding & Surety Co.*, 103 Neb. 202, the court said:

"The bond contains two contracts, one with the owner, and the other for the benefit of those who supply labor or materials. 'The surety becomes bound for the performance of the work by the principal in accordance with the stipulations of the contract, and for the prompt payment of the sums due to all persons supplying labor and material in the prosecution of the work provided for in the contract.' *Equitable Surety Co. v. United States*, 234 U. S. 448, 34 Sup. Ct. Rep. 803. The laborers and materialmen are the beneficia-

ries in the bond." See also *Algonite Stone Mfg. Co. v. Fidelity & Deposit Co. of Maryland,* 100 Kan. 28; *Hartford Accident & Indemnity Co. v. W. & J. Knox Net & Twine Co.,* 150 Md. 40; *Fidelity & Deposit Co. of Baltimore, Md. v. Rainer,* 220 Ala. 262, 125 So. 55, 57; *Orinoco Supply Co. v. Shaw Bros. Lumber Co.,* 160 N. C. 428; *Concrete Steel Co. v. Ill. Surety Co.,* 163 Wis. 41. In *Board of Education v. Chicago Bonding & Surety Co.,* 218 Ill. App. 20, the court said:

"The bond is dual in its nature; it contains two promises—one to the Board of Education that the contractor shall perform the work as agreed; the other to the laborers and materialmen to pay them for labor and material they might perform or furnish to the contractor. The consideration is sufficient to support both conditions."

In *Board of Education v. Aetna Indemnity Co.,* 159 Ill. App. 319, 321, the court said:

"To hold the bonds in question valid and binding is only to compel the obligors to do the thing they bound themselves to do."

In *Merchants Loan & Trust Co. v. Ummach,* 228 Ill. App. 67 (certiorari denied by Supreme Court, 231 Ill. App. XXX), the court said:

"Where one makes a contract with another, for the benefit of a third person, the latter, though not a party to the contract, may maintain an action upon it against the promisor. The contract need not have been accepted or assented to by the third party. It does not involve an indemnity, but the promise is deemed to invest the person for whose benefit it is made with an immediate interest and right as though the promise had been made to him. To enable the third party to maintain an action on the contract, it is not necessary that any consideration shall have moved from the third party to the promisor. The consideration moving from the promisee is sufficient on which to base

the liability of the promisor to the third party. In such an action the question of the liability of the promisee to the third party is immaterial, as the liability of the promisor does not depend upon the liability of the promisee to the third party. The promisee need not have been indebted to the third party, nor is it necessary that the obligation undertaken by the promisor shall relieve the promisee of any legal liability. It is not necessary, to enable the third party to sue the promisor, that the obligation shall have been undertaken by the latter directly or primarily for the benefit of the third person. The liability of the promisor to the third party in an action brought by the latter against the former depends merely upon the question of whether the third party has a beneficial interest in the enforcement of the contract.''

The next defense relied upon by the defendant is that The Danville Hotel Company, the promisee in the bond, failed to perform its agreement to pay the general contractor in full the sum of $822,699, as provided in the contract, and that this default impairs the plaintiff's right of action on the bond. We find no merit in this contention for the reason that the right of action on behalf of the plaintiff Stevenson, arose immediately upon the furnishing by him of his materials, and was not dependent upon any terms of the original contract, and by the terms of the bond when Stevenson furnished the materials used in the Wolford Hotel he became a beneficiary thereunder. (*United States Gypsum Co. v. Gleason*, 135 Wis. 539, 544; *Royal Indemnity Co. v. Northern Ohio Granite & Stone Co.*, 100 Ohio 373.) The bond was dual in its nature; it contains two promises, one to The Danville Hotel Company that Charles Benson, Inc., shall perform its contract, as agreed, and the other to the materialmen to pay them for the materials furnished to Charles Benson, Inc. (*Board of Education v. Chi-*

*cago Bonding & Surety Co., supra.*) The respective rights of action of the subcontractors and The Danville Hotel Company on the bond, were separate, distinct and independent. (*Kaufmann v. Cooper,* 46 Neb. 644.)

It is finally contended that Stevenson by giving the waiver of lien in return for the two notes of The Danville Hotel Company, and by failing to perfect his lien, has lost any right of action that he might have had against the defendant. Surety companies doing a surety business for profit cannot be relieved from their obligations except where it is shown there was a material departure from the contract which had resulted in some injury to the surety. (*Gunsul v. American Surety Co. of New York,* 308 Ill. 312; *City of Chicago v. Agnew,* 264 Ill. 288.) In the instant case the defendant is a surety company doing a surety business for profit. From the undisputed evidence it appears that the waiver of lien was given to Charles Benson, Inc., in order to obtain the money due Stevenson for materials furnished, and it was upon this assurance that Stevenson gave the waiver of lien and obtained the notes, and it further appears that Charles Benson, Inc., received no money upon its contract, at or subsequent to the date of the execution and delivery of the waiver of lien, and the funds in the hands of . The Danville Hotel Company were not diminished. It therefore follows that the defendant suffered no injury because of the execution of the waiver of lien. Nor is the fact that Stevenson failed to file his lien against the Wolford Hotel a defense to this action, as he did nothing toward dissipating any fund in the hands of The Danville Hotel Company. Stevenson's conduct did not deprive the defendant of any fund and we agree with Stevenson's contention that it was essential, before any defense could be predicated upon this ground, for the defendant to prove that Stevenson,

by some affirmative action caused the loss to Charles Benson, Inc., and the defendant, of moneys which should have been used on their behalf. This the defendant has failed to prove.

After a careful consideration of all the evidence, and the law applicable thereto, we are of the opinion that no reversible error has been shown. The judgment is affirmed.

*Affirmed.*

GRIDLEY, P. J., and SCANLAN, J., concur.