The People of the State of Illinois for the use of National Cast Iron Pipe Company, Appellant, v. E. J. Merkle, Trading as Merkle Contracting Company, and National Surety Company, Appellees.

**Gen. No. 8,561.**

Opinion filed February 23, 1933.

HUNTER & MINOR and BERTRAND WALKER, for appellant.

DENT, WEICHELT & HAMPTON, for appellees; GEORGE M. WEICHELT, of counsel.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

This is an action of assumpsit begun to the May Term, 1932, of the circuit court of Kankakee county by the People of the State of Illinois, for the use of the National Cast Iron Pipe Company (herein called appellant), and against E. J. Merkle, doing business as Merkle Contracting Company, and the National Surety Company (herein called appellees) to recover $14,620.68 for material sold and delivered to said E. J. Merkle and used in the construction of a water distribution and fire piping system at the State Hospital at Manteno, Illinois.

The declaration alleges in substance that "E. J. Merkle, doing business as Merkle Contracting Company, entered into a written contract with the State of Illinois for the providing of all materials and the performance of all work necessary for the construction of water distribution and fire piping system for the Manteno State Hospital, and for the doing of everything required by the general conditions of the contract, the specifications and drawings, for the consideration of $44,000.00; that on March 18, 1930, E. J. Merkle, and the said National Surety Company, as surety, executed a bond binding themselves to the People of the State of Illinois in the penal sum of $44,000.00 for the faithful performance of the contract and the full payment for all labor and materials furnished and used pursuant to said contract." The contract and bond are set out verbatim in the declaration. The contract is quite lengthy, but it provides, in substance, that the contractor shall provide all the materials and perform all the work shown on the drawings and described in the specifications for the

construction of water distribution and fire piping system, Manteno State Hospital near Manteno, Illinois, and do everything required by the general conditions of the contract, the specifications and drawings; that the owner shall pay the contractor $44,000.00; the contractor and owner agree ''that the general conditions, the specifications and drawings, together with this agreement, form the contract and are as fully a part of the contract as if hereto or herein repeated.'' The general conditions require that the successful bidder shall furnish a surety bond for the full amount of the contract. The general conditions further provide, among other things, as follows:

''Article 1. (c)—The term 'subcontractor,' as employed herein, includes only those having a direct contract with the contractor, and it includes one who furnishes material, even though he does no work.

''(e)—, The term 'work' of the contractor or subcontractor, includes labor or materials, or both.

''Article 11.—''Unless otherwise stipulated, the contractor shall provide and pay for all materials, labor, water, tools, equipment, light and power necessary for the execution of the work.

''Article 20.—The owner will require the contractor to furnish bond covering the faithful performance of the contract and the payment of all obligations arising thereunder, in such form as the owner may prescribe and with such sureties as he may approve. The premium shall be paid by the contractor.

''Article 24.—The contractor shall submit to the engineer an application in a form prescribed for each payment and a sworn statement of all amounts due or to become due for services, labor, material or contracts, and receipt or other vouchers showing the payments for materials and labor including payments to subcontractors. Such application shall be submitted at least ten days before each payment falls due, and the

contractor shall, before the first application, submit to the engineer a schedule of values of the various parts of the work, including quantities aggregating the total sum of the contract, divided so as to facilitate payments to subcontractors, made out in such form, and if required, supported by such evidence as to its correctness as the engineer may direct. This schedule when approved by the engineer shall be used as a basis for certificates of payment, unless it be found to be in error.

"Article 28.—The supervising architect or the engineer may withhold, or on account of subsequently discovered evidence, nullify the whole or any part of any certificate for payment to such an extent as may be necessary to protect the owner from loss on account of . . . (c) failure of the contractor to make payments properly to subcontractors or for material or labor. . . . When all of the above grounds are removed certificates shall at once be issued for amounts withheld because of them.

"Article 36.—If the contractor . . . should fail to make prompt payment to subcontractors or for material or labor . . . the owner then, upon the certificate of the engineer that sufficient cause exists to justify such action, may without prejudice to any other right or remedy and after giving the contractor seven days' written notice, terminate the employment of the contractor and take possession of the premises and of all materials, tools and appliances thereon and finish the work by whatever method he may deem expedient.

"Article 39.—The contractor shall, on a prescribed form, notify the engineer of the names of subcontractors proposed for the principal parts of the work and for such others as the engineer may direct and shall not employ any that the engineer may, within a reasonable time, object to as incompetent or unfit.

"The engineer shall on request furnish to any subcontractor, wherever practicable, evidence of the amounts certified to on his account.

"The condition of this obligation is such that, Whereas, the above bounden, E. J. Merkle, as party of the first part, on the 19th day of February, 1930, entered into a certain contract in writing with the State of Illinois, acting by and through the Department of Purchases and Construction, as party of the second part, for furnishing labor and material for the Manteno State Hospital required in the erection, construction and completion of water distribution, piping and fire piping systems in conformity with the drawings, general conditions and specifications prepared by the Department of Architecture and Engineering, C. Herrick Hammond, Supervising Architect, which drawings, general conditions and specifications are made a part of the aforesaid contract.

"Now, therefore, if the above bounden E. J. Merkle, heirs, executors, administrators, successors and assigns, shall in all things stand to and abide by and well and truly keep and perform each and every of the covenants, conditions and agreements on the part of the said principal to be kept and performed, within the time and in the manner and form as in said contract entered into, as aforesaid, contained, then the above obligation to be void; otherwise, to remain in full force and effect."

The declaration further alleges that after the execution and delivery of said contract and bond, said E. J. Merkle entered upon the performance of said contract and has subsequently completed the same; that the work and material so performed and furnished was duly accepted by the State; that the National Cast Iron Pipe Company, at the request of said E. J. Merkle, furnished and delivered certain materials to said E. J. Merkle, doing business as Merkle Contracting

Company, to be used in and about the construction and completion of said water distributing and fire piping systems; that materials of the value of $24,550.29 were received by said Merkle and used in the construction of said work; that payments on said account to the amount of $9,929.61 were made by said Merkle, leaving a balance still due and owing to the said National Cast Iron Pipe Company by the said Merkle of $14,620.68, which he has refused to pay; that although the National Cast Iron Pipe Company has often demanded payment of said indebtedness from said National Surety Company, yet the said National Surety Company has not paid and refuses to pay to said National Cast Iron Pipe Company the said sum of $14,620.68, or any part thereof, due and owing under said bond.

The National Surety Company filed a general demurrer to the declaration, which, upon hearing, was sustained. Judgment was entered against appellant for costs and that it take nothing by its suit. Appeal was prayed and allowed to this court.

The question involved in this court is: Did the court err in sustaining the demurrer to the declaration? A determination of this question rests entirely upon the wording of the bond of the National Surety Company. By the pleadings it is admitted that E. J. Merkle is indebted to the appellant in the sum of $14,620.68 for material furnished to Merkle in the construction of the Manteno State Hospital. It is the contention of the appellant that the language of the bond is broad enough to make the surety company liable to appellant for the payment of this material.

In the case of *Gunsul v. American Surety Co.,* 308 Ill. 312, the court, in discussing the liability of the surety say: ''The weight of modern authority makes a distinction between the rights and liabilities of a voluntary surety or one who becomes a surety for mere accommodation, and the rights and liabilities of corpo-

rate sureties who become such for hire. In the case of voluntary sureties for accommodation, if the creditor, by valid and binding agreement, without the consent of the surety gives further time for payment to the principal, the surety is discharged whether actually damnified or not. Corporations doing a surety business for profit are of comparatively recent origin and their contracts are treated as contracts of indemnity or insurance. As to such sureties it is, we believe, generally held they cannot be relieved from their obligations except where it is shown there was a material departure from the contract which resulted in some injury to the surety.''

While it is true that the bonds given by the surety company to secure the performance of a contract by the principal are to be strictly construed against the company in case of an ambiguity, if there is no ambiguity, there is no room for construction of the contract of surety. *Lesher v. United States Fidelity & Guaranty Co.*, 239 Ill. 502.

In the case of *Searles v. City of Flora*, 225 Ill. 167, a contract of insurance was offered similar to the one before us. On page 170 of the opinion the court has this to say: ''The contract, by its terms, provided that Searles was to pay for all materials, engines, dynamos, connections, machinery, instruments, equipments, and labor for said improvement. The bond, after reciting the terms of the contract, provided that the 'above bounden' shall well and truly keep, do and perform each and every, all and singular, the matters and things in said contract set forth and specified to be and by said principal kept, done and performed at the time and in the manner in said contract specified, and should pay to the obligee all losses and damage sustained by reason of the failure or default on the part of said principal. It will be observed that the bond, as well as the contract, runs directly to the City

of Flora. There is nothing in any of the terms used in either to indicate that it was intended to apply to or protect third persons. If the bond or contract by its terms had provided that it was given for the benefit of subcontractors or materialmen as well as the City of Flora there would be force in the contention of appellee. It is evident, however, that the purpose of its execution was to insure the completion of the work within the contracted period, free from liens of every kind. If the city had been required to pay any claims arising for materials furnished, by reason of a lien on the funds in its hands or for any other cause, then the surety company would be required to reimburse and save it harmless.''

In the case of the *Kenfield Publishing Co. v. Baumgartner*, 189 Ill. App. 413, the court says: ''The doctrine that a third party may maintain an action on a promise made by one person to another for his benefit is limited to contracts which have for their primary object and purpose the benefit of a third person and which are made for his direct benefit.'' In *Masters v. Dunlap*, 231 Ill. App. 395, the court says: ''It must be pointed out, however, that the averments in the declaration taken in connection with the terms of the contract as set out in the declaration do not bring the case within the rule. Neither the contract by its terms nor the averments in the declaration shows that the lease contract was made for the benefit of the appellant, or that she was to derive any benefit therefrom.'' *Nicholson v. Nicholson Coal Co.*, 190 Ill. App. 607.

In the case of *Seefeldt v. Wilgen*, 193 Ill. App. 315, the court said: ''It is not every contract made by one person with another from the performance of which a third person will derive a benefit on which such third person may maintain an action, 'there must not only be an intent to secure some benefit to such third person, but the contract must have been made and entered into directly and primarily for his benefit.' ''

In the case of the *Aurora, Elgin & Chicago R. Co. v. National Surety Co.*, 198 Ill. App. 502, where the condition of the bond is practically the same as the bond in question, the court, after reviewing the facts and quoting from the case of *Searles v. City of Flora* (*supra*), says: ''Nothing whatever is said in the bond about paying third parties for material or anything else. It was made to indemnify the defendant railroad company and none other. We cannot extend the liability of defendant by construction. On the contrary, the obligation of a surety, which is the obligation of defendant, must be strictly construed, and it cannot be held under the terms of its undertaking by implication or construction.''

The same question was before the Supreme Court in the case of *Spaulding Lumber Co. v. Brown*, 171 Ill. 487. The court in discussing the case says: ''This bond was given to the board of education for its protection and benefit. The board never claimed a breach of the bond, and there was no breach so far as the board was concerned. There were no liens against the premises and the building was completed, and there remained a balance in the hands of the board to be paid out under the contract, as was conceded by filing the bill of interpleader. The bond contained no provision under which the sureties became bound to protect subcontractors, and no principle occurs to us under which they could be held liable on the bond.'' We have examined the cases cited by the appellant and we find that the bonds in those cases were different from the one under discussion. In the case of the *Danville Hotel Co. v. Benson*, 262 Ill. App. 288, the bond contained this clause: ''shall pay all persons who have contracts directly with the principal for labor or materials.'' In the case of *Cherry v. Benson*, 264 Ill. App. 199, the bond contains the following: ''shall pay all persons who have contracts directly with the prin-

cipal for labor and materials, then this obligation shall be null and void, etc."

In the case of *Carson Pirie Scott & Co. v. Parrett,* 346 Ill. 252, the court, in passing on the bond, discusses the *Searles* case (*supra*), and distinguishes the bond in the *Searles* case from the case of Carson Pirie Scott & Co., and holds that in the *Carson Pirie Scott & Co.* case the bond was given for the benefit of a third party. Counsel for appellant have not cited nor has this court been able to find any case where the language of the bond is similar to the one in question, in which the courts have held that a materialman not mentioned in the bond would be able to maintain a suit on a bond for the amount of material he furnished to the contractor who was under bond faithfully to perform his contract.

We are of the opinion that the language of this bond is such that the appellant could not maintain a suit against the surety company on this bond and the court properly sustained the demurrer to the declaration and the judgment of the circuit court of Kankakee county is affirmed.

*Judgment affirmed.*