Eleanor Davis Harris et al., for use of Otis Elevator Company, Appellants, v. American Surety Company of New York, Appellee.

Gen. No. 39,888.

Heard in the second division of this court for the first district at the December term, 1937. Opinion filed October 18, 1938. Rehearing denied November 1, 1938.

SIMS & STRANSKY, of Chicago, for appellants; FRANK-LIN J. STRANSKY, TIMOTHY I. McKNIGHT and EDWARD J. McLAUGHLIN, all of Chicago, of counsel.

ADAMS, HAWXHURST, HAWLEY & WHITE, of Chicago, for appellee; RALPH R. HAWXHURST and HOMER C. DAWSON, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Eleanor Davis Harris and others brought suit against the American Surety Company of New York, for the use of Otis Elevator Company, to recover the contract price of a freight elevator installed in a building owned by the Harris heirs in McKeesport, Pa., pursuant to a written contract entered into between the Otis Elevator Company and the Good Construction Company, a contractor, which had agreed with the owners to erect a building, including the freight elevator, and furnish all materials and labor therefor. The suit is predicated on a surety bond executed by the Good Construction Company, as principal, and American Surety Company, as surety, and is brought

for the use of Otis Elevator Company, the beneficial plaintiff herein. The court sustained a motion to strike the complaint, as amended, and plaintiffs, having abided by their complaint, judgment was entered against them for costs, and this appeal followed.

From the material allegations of the complaint, as amended, it appears that on April 24, 1929, Good Construction Company, as general contractor, entered into a written agreement with Eleanor Davis Harris and other heirs for the construction and completion of a certain building in McKeesport, Pa., including the furnishing of a freight elevator and certain machinery and equipment necessary to operate it. Thereafter, May 23, 1929, Good Construction Company made a contract with the Otis Elevator Company, by which the latter undertook to furnish the freight elevator and to complete the installation thereof. The elevator was installed, as agreed, but Good Construction Company failed to pay the purchase price in accordance with its contract and thereafter suit was instituted by the Harris heirs, for the use of the beneficial plaintiff. It is averred that the agreement between Good Construction Company and the Harris heirs, as owners, provided among other things that the contractor "shall and will provide all the materials and perform all the work for the erection and completion of a two-story and basement building," upon the owners' property; that by a supplemental agreement, executed contemporaneously with the first contract between Good Construction Company and the owners, it was provided that the contractor would, at its own expense, procure and deliver to the owners a bond with a corporate surety satisfactory to the owners, "to secure the faithful performance by said contractor of its said contract"; that the supplemental agreement further provided that neither the contractor nor any subcontractor, materialman or other person whatsoever

would file, enter or maintain a lien, commonly called a "mechanic's lien," for work done or materials furnished upon the premises for the purpose of the work contracted to be performed, or for any. work done or materials furnished or services of any kind rendered in connection therewith; that by the supplemental agreement the contractor further agreed to keep the building and premises at all times free from liens and to indemnify and save harmless the owners, "from any costs, expenses, attorney's fees, loss or damage resulting from the filing of any lien or liens, contrary to the provisions of this agreement," either by the contractor or by any other person for work done, materials furnished or services rendered under the contract.

Pursuant to the provisions contained in the supplemental agreement, Good Construction Company, as principal, and defendant, as surety, executed a bond, the condition of which was as follows: "That if the Principal shall erect and complete the said building in accordance with the terms of said agreement and shall in all respects faithfully perform all of the obligations of the Principal under the said agreement *and shall satisfy all claims and demands incurred for the same,* and shall fully indemnify and save harmless the Owners from all cost and damage which the Owners may suffer by reason of the failure of the Principal so to do, and shall fully reimburse and repay the Owners all outlay and expense which the Owners may suffer by reason of the failure of the Principal so to do, and shall fully reimburse and repay the Owners all outlay and expense which the Owners may incur in making good any such default, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

The question presented is whether or not the language of the bond, hereinbefore set forth, read in con-

nection with the contract between Good Construction Company and the owners of the property, was sufficient to disclose an intent that the protection of the bond should inure not only to the owners but to third persons furnishing to the contractor labor and material necessary to enable it to carry out this agreement with the owners. It is conceded by counsel for the respective parties that where one enters into a contract with another for the benefit of a third person who is not a party to the agreement, such third person may maintain an action in his or her name for a breach thereof. The controverted question is whether or not the bond herein was made, not only for the benefit and protection of the owners of the property, but also for the benefit and protection of third persons having claims and demands "incurred" by the contractor to enable him to erect and complete the building.

The construction contract and bond in this case were made in the State of Pennsylvania, and in accordance with the laws of that State. The Good Construction Company, general contractor, was a Pennsylvania corporation. The American Surety Company, defendant herein, was authorized to do business in Pennsylvania, and the bond in question was entered into in that State. The Otis Elevator Company, plaintiff, was likewise authorized to do business in Pennsylvania, and its contract with the Good Construction Company was made in and dated at Pittsburgh in that State. The building in question was erected in McKeesport, Pa. Defendant's counsel, pointing out these facts, say that the contracts having been made in Pennsylvania and to be performed there, are governed by the laws of that State, and that plaintiffs instituted suit in Illinois because the law of Pennsylvania will not permit a recovery upon a bond or contract by or for the use of a third person to which he is not a party, the only exceptions to the rule being

(1) that where one person agrees with another to pay money to a third, or to deliver some valuable thing and such third party is the only one interested in the payment of the transaction; (2) where the promise to pay the debt of a third person rests upon the fact that money or property is placed in the hands of the promisor for that purpose; and (3) where one buys out the stock of a tradesman and undertakes to take the place, fill the contracts, and pay the debts of the vendor. (*First M. E. Church v. Isenberg*, 246 Pa. 221; *Concrete Products Co. of America v. United States Fidelity & Guaranty Co.*, 310 Pa. 158.)

This leads to a consideration of the rule of law employed in this State regarding contracts of this nature. Defendant relies principally on the leading case of *Searles v. City of Flora*, 225 Ill. 167, wherein the city brought an action in debt against Aaron M. Searles and the National Surety Company for the use of A. L. Ide & Sons, a general contractor. It appeared from the evidence as disclosed in the opinion that Searles had submitted to the city council of Flora a proposition to rebuild, improve and enlarge its electric light station and furnish certain engines and generators, for the sum of $4,000. Pursuant to this proposal a contract was entered into wherein Searles agreed that he would furnish and pay for all necessary materials and labor. The city agreed to pay Searles $2,000 upon the arrival of the machinery, and the balance upon completion of the improvement. Searles undertook to furnish to the city a bond to secure the faithful performance of all the terms of the contract, and pursuant to this undertaking he, as principal, and the National Surety Co., as surety, presented to the city a bond in the sum of $4,000, conditioned as follows: "The condition of the obligation is such, that whereas the above bounden principal, A. M. Searles, has entered into a certain contract with the above

named obligee, a copy of which contract is hereunto attached . . . . : Now, therefore, if the above bounden principal shall well and truly keep, do and perform each and every, all and singular, the matters and things in said contract set forth and specified to be by said principal kept, done and performed, at the time and in the manner in said contract specified, *and shall pay over, make good and reimburse to the above named obligee all loss and damage which said obligee may sustain by reason of failure or default on the part of said principal,* then this obligation shall be null and void, otherwise to be and remain in full force and virtue." (Italics ours.) The construction contract in the *Searles* case provided that the contractor "would furnish and pay for all materials, engines, dynamos, connections, machinery, instruments, equipments and labor for said improvement in said electric light plant," and the contractor purchased but did not pay for certain machinery which was thereafter installed. Suit was brought on the bond in the name of the city of Flora, for the use of the subcontractors, to recover the unpaid balance due them. The trial court and the Supreme Court both held that the suit could not be maintained, either directly or indirectly for the benefit of these subcontractors, because the contract and bond were not entered into "directly and primarily" for their benefit. The court pointed out that the bond, as well as the contract, ran directly to the city of Flora, reaffirmed the doctrine that the obligation of a surety must always be strictly construed (*City of Sterling v. Wolf,* 163 Ill. 467), but held that there was nothing in any of the terms used in either the contract or the bond to indicate that it was intended to apply to or protect third persons. In construing the contract and bond, the court said (p. 171): "If the bond or contract by its terms had provided that it was given for the benefit of subcontractors or materialmen, as well as the

city of Flora there would be force in the contention
of appellee. It is evident, however, that the purpose
of its execution was to insure the completion of the
work within the contracted period, free from liens of
every kind. If the city had been required to pay any
claims arising for materials furnished, by reason of a
lien on the funds in its hands, or on any other cause,
then the surety company would be required to reim-
burse and save it harmless." After reviewing and
discussing several decisions cited the court concluded
(p. 172): "From these and other authorities which
might be cited we take the rule to be, that to entitle a
third person to recover upon a contract made by others
there must not only be an intent to secure some benefit
to such third person, but the contract must have been
made and entered into directly and primarily for his
benefit." The court also pointed out that as between
the parties, and certainly as against the surety on the
bond, the contract contemplated that Searles should
pay for engines and generators upon delivery, but that
he had no right to purchase these articles on credit,
and distinguished the case from *City of St. Louis v.
Von Phul,* 133 Mo. 561, wherein suit was brought on a
bond not unlike the one in the *Searles* case, but which
expressly provided that as soon as the contract was
completed the contractor should pay to the principal
parties all amounts due for labor and materials used
and employed in the performance thereof.

The interpretation of the contract and bond in the
*Searles* case and the doctrine enunciated with refer-
ence to the right of third persons to recover on a con-
tract made by others was followed in *City of Herrin v.
Stein,* 206 Ill. App. 339, wherein suit was brought on
a bond in the name of the city of Herrin for the use of
certain subcontractors of Henry Stein & Son, who had
entered into an agreement with the city to construct
a city hall. The contract there provided that Stein &

Son were "to build and furnish all material and labor necessary for the erection and completion of a brick and stone three story City Hall and Lodge building for the City; . . . *and shall duly and promptly pay and discharge all indebtedness that may be incurred by them in carrying out said contract.* . . ." (Italics ours.) The bond in that case was conditioned upon the contractor truly keeping and performing the agreement in strict accordance with the terms thereof. The Appellate Court held that the declaration contained no allegation of breach of the bond so far as the city was concerned, affirmed the rule that the contract and bond must be construed together as one instrument, and held that the words "shall pay and discharge all indebtedness that may be incurred by them in carrying out said contract" did not indicate that the contract was intended for the benefit and protection of third persons. In so holding the court distinguished that case from *Board of Education v. Aetna Indemnity Co.,* 159 Ill. App. 319, upon the ground that the bond in the latter case expressly provided that the contractor should "promptly make payment *to all persons* supplying him with labor or materials" (italics ours), and added that "the fact that appellant is a paid surety does not justify this court in departing from the rule of construction adopted by the Supreme Court in such cases." The decision in the *Herrin* case was predicated upon a declaration containing allegations not unlike those in the amended complaint in this proceeding, and the court concluded that in the absence of any allegation that the city of Herrin had been required to pay any claim for materials furnished, the declaration, as amended, did not state a cause of action and that the demurrer thereto should have been sustained. The effect of the decision, following the ruling in the *Searles* case, is that the contract and bond in that proceeding were not made directly and primarily

for the benefit of any third person, and therefore suit could not be brought thereon in the name of the obligee for the use of any third person.

In *People for use of National Cast Iron Pipe Co. v. Merkle*, 269 Ill. App. 449, action was brought in the name of the people for the use of the National Cast Iron Pipe Co. and against Merkle and the Surety Co. Merkle, the general contractor, had entered into an agreement with the State of Illinois for the construction of a water distribution system for the Manteno State Hospital. At Merkle's request the pipe company had furnished and delivered materials to him for use in the work, for which he failed to pay. The agreement required Merkle, the contractor, to "provide and *pay for all materials, labor, water, tools, equipment, light and power necessary for the execution of the work.* The owner will require the contractor to furnish bond covering the faithful performance of the contract and the payment of all obligations arising thereunder, in such form as the owner may prescribe and with such sureties as he may approve." (Italics ours.) The condition of the bond in that case was that "if the above bounden E. J. Merkle . . . shall in all things stand to and abide by and well and truly keep and perform each and every of the covenants, conditions and agreements on the part of the said principal to be kept and performed, within the time and in the manner and form as in said contract entered into . . . , then the above obligation to be void; otherwise, to remain in full force and effect." The surety company filed a general demurrer to the declaration which was sustained, and in passing upon the right of a third person to recover on a contract to which he is not a party, the court pointed out that in each case in which a recovery was allowed, the language of the obligation required the contractor, "to pay all persons," who have contracts with the princi-

pal, or supply the principal with labor or materials, and that a contractor's bond which merely requires him to furnish *and pay for materials* is not a contract on which a third person can maintain a suit, either directly or in the name of the obligee for his use.

*Carson, Pirie Scott & Co. v. Parrett,* 346 Ill. 252, decided in 1931, is one of the cases cited by plaintiffs to sustain their position that the language of the bond executed by defendant in this proceeding, read in connection with the contract between Good Construction Company and the owners of the property, was sufficient to disclose an intent that the protection of the bond should inure to the benefit of third persons furnishing to the contractor labor and material necessary to comply with the agreement. That case involved a contract by which certain defendants agreed to pay for furnishings and equipment if the Danville Hotel Company did not do so. The furnishings and equipment referred to were mentioned in the contract with the names of the persons from whom they were purchased, and among the list was the following, ''Linens—Carson Pirie Scott Company, Marshall Field Company, $6,763.25,'' and immediately following the list of furnishings and equipment the contract contained the following provision: ''The parties of the first part will promptly pay for the above characters of furnishings and equipment when payments are due, if the Hotel Company does not do so, so that the installation of same promptly and free of lien is assured.'' The court held that Carson Pirie Scott & Company could maintain a suit upon that contract because it was expressly named therein, with the amount of the obligation specifically stated, and that there was a direct promise by the obligors to pay it if the hotel company did not do so, and in discussing the legal principle involved, affirmed the rule laid down in *Searles v. City of Flora, supra,* as follows: ''The rule is settled in this State

that if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; if incidental he has no right of recovery thereon. This rule has been announced without variation in numerous cases decided by this court." (Citing *Kinnan v. Hurst Co.*, 317 Ill. 251; *Vial v. Norwich Union Fire Ins. Society*, 257 Ill. 355; *Searles v. City of Flora*, 225 Ill. 167; and various other Illinois decisions.

Plaintiffs also cite and rely upon *Merchants Loan & Trust Co. v. Ummach*, 228 Ill. App. 67; *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252; *Danville Hotel Co. v. Benson, Inc.*, 262 Ill. App. 288; *Board of Education for use of Weil v. Chicago Bonding & Surety Co.*, 218 Ill. App. 20, and *Board of Education v. Aetna Indemnity Co.*, 159 Ill. App. 319. The first two of these cases involved contracts other than construction contracts or bonds, and in those two cases the third person beneficiaries of the contracts were specifically named, together with the amount of the debt due the third person which was set forth in the contracts, and in each instance the contract contained an express obligation to pay such named person. In the three remaining cases, the suits were upon construction bonds in which the obligation was in each instance to pay or make payment "to all persons" supplying labor or materials.

Plaintiffs' counsel argue that the omission of the words "to all persons" does not preclude a recovery, because they say that the language employed in the bond should be construed as an intention of the parties thereto to protect, not only the rights of the owners of the property but also third persons who in good faith furnished the material and labor to enable the

contractor to perform its contract with the owners. It is argued that the words "satisfy all claims and demands incurred for the same" must necessarily have referred to claims and demands incurred by the contractor with third persons who furnished materials and labor to enable the contractor to carry out its agreement with the owners. However, language of similar import was employed in the *Searles v. City of Flora, supra,* and other cases cited and discussed hereinabove, and the Supreme and Appellate Courts of this State have consistently held that to entitle a third person to recover upon a contract made by others there must not only be an intent to secure some benefit to such third person, but the contract must have been made and entered into directly and primarily for his benefit, and that the test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. In view of these decisions we are constrained to hold that the law in this State is well settled and that the language employed in the agreement and bond was properly construed by the court adversely to plaintiffs' herein.

It is urged by plaintiffs that the case should not have been decided on the motion to strike, but should have been resolved on the merits, inasmuch as the intention of the parties could only be ascertained from the language of the bond in the light of the surrounding facts and circumstances, and that evidence should have been permitted to disclose the intention. The rule is well settled that intention must and can only be sought in the language employed in the instrument itself and from the ordinary or popular meaning of the words themselves, unless it is apparent they are used in a technical or particular sense. (*Lesher v. United States Fidelity & Guaranty Co.,* 239 Ill. 502.) In the *Merkle* case, 269 Ill. App. 449, the court pointed out that (p. 455) "While it is true that bonds given by

the surety company to secure the performance of a contract by the principal are to be strictly construed against the company in case of an ambiguity, if there is no ambiguity, there is no room for construction of the contract of surety. (Citing *Lesher v. United States Fidelity & Guaranty Co.*, 239 Ill. 502.)'' The contract and bond in this proceeding contain no such technical language as would justify the admission of extraneous evidence and circumstances to explain the plain language employed in these instruments.

We are of the opinion that the court properly sustained defendant's motion to strike plaintiffs' complaint as amended. The judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*

SCANLAN and SULLIVAN, JJ., concur.