(No. 42083.—

THOMAS HAMMEN, d/b/a Hammen Electric Company *vs.* HANSEN & WERHANE, INC., Appellee.—(FIDELITY & DEPOSIT COMPANY OF MARYLAND, Appellant.)

*Opinion filed December 19, 1969.*

DENT, HAMPTON & DOTEN, of Chicago, and JAMES L. WARING, of Ottawa, for appellant.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

The appellate court held that Thomas Hammen, an electrical contractor, could unilaterally discharge Fidelity and Deposit Insurance Company, surety on his performance and payment bond, from liability on the bond after he had started to perform his contract, purchased materials and employed laborers. (105 Ill. App. 2d 428.) We granted leave to appeal to determine whether, under the facts of the case, Hammen could discharge the surety without the consent of third-party beneficiaries of the bond. (See *Cherry v. Benson, Inc.,* 264 Ill. App. 199; *Danville Hotel Co. v. Benson, Inc.,* 262 Ill. App. 288; 17 Am. Jur. 2d, Contractors' Bonds, secs. 93-106.) Now that the record is before us, it is apparent that the manner in which the case was tried prevents us from reaching this issue and that the appellate court erred in considering it.

On April 1, 1964, the Housing Authority for La Salle County, in order to construct a housing project to be occupied by elderly persons, executed a general construction contract with Hansen & Werhane, Inc. in the amount of $511,940, a plumbing and heating contract with Curtin Plumbing and Heating in the amount of $140,490, and an electrical contract with Hammen Electric Company in the amount of $65,990. On the same day the Housing Authority assigned the plumbing and heating and electrical contracts together with the performance and payment bonds of the mechanical contractors to the general contractor.

In accordance with the provision of the specifications requiring a performance and payment bond in a penal sum of at least 100% of the contract awarded, the general contractor delivered a $718,420 bond to the Housing Authority as security for performance of its contract and the mechanical contracts assigned to it. Hammen also delivered to the Housing Authority his performance and payment bond in the amount of $65,990. Since the general contractor was required to furnish a performance and payment bond which covered all three contracts awarded by the Housing

Authority, it felt that the two mechanical contractors should cancel their bonds, obtain a refund of the premium paid to their surety and pay this refund to it as contribution for the premium on the bond it furnished.

Hammen began performing his electrical contract shortly after it was awarded on April 1, 1964. In late July, the general contractor notified Hammen to cancel his bond and obtain a refund of his premium. Hammen attempted to cancel his bond and obtain a refund of the $626.59 premium he had paid to Fidelity. His request for a refund of the premium was refused.

When the job was completed, the general contractor refused to pay Hammen $626.59 which it withheld as Hammen's contribution toward the premium on its bond. Hammen then filed a small claim complaint against the general contractor in the circuit court of La Salle County for $626.59. The general contractor filed an answer denying it owed Hammen $626.59 and a third-party complaint against Fidelity alleging that Fidelity should be liable to it to the same extent, if any, it is liable to Hammen. The trial court entered judgment in favor of Hammen and against the general contractor for $626.59 and judgment in favor of the general contractor and against Fidelity for $626.59. Fidelity appealed from the judgment against it. The appellate court held that Fidelity was liable to the general contractor for the unearned premium on the Hammen bond from January 1, 1965, the date cancellation was attempted by Hammen, to June 1, 1965, the date Hammen completed his electrical contract. It computed the unearned premium to be $233.75.

It is clear from the record that while the general contractor felt Hammen should contribute to the premium the general contractor had to pay on its bond, there was no legal obligation that Hammen do it. The specifications were also clear that the mechanical contracts could be assigned by the Housing Authority to the successful bidder on the general construction contract and that, if these mechanical con-

tracts were assigned, the general contractor was to furnish a performance and payment bond covering the entire project. The specifications made no provision for a subcontractor to contribute to the payment of premium for a surety on the general contractor's bond. Arthur Werhane, president of the general contractor corporation, testified he knew of no provisions in the specifications requiring such contribution by a subcontractor.

It is also clear from the record that Hammen did not feel obligated to contribute to the payment of a premium for a surety on the general contractor's bond. The specifications required him to furnish a performance and payment bond with surety. He paid the premium for the surety on his bond and this premium was included in his bid and contract price of $65,990. At the request of the general contractor, he was willing to cancel his bond and attempted to obtain a refund of his premium. Hammen testified that he did not feel that he could cancel his bond and obtain a refund, but that he did attempt to get a refund and that if he had gotten a refund, he would have given the refund to the general contractor. When the refund was denied by Fidelity and the general contractor withheld the amount of the premium, Hammen filed an action against the general contractor and not against Fidelity.

The appellate court got to the issue of Hammen's right to cancel the bond and demand a refund of the premium paid to his surety when it stated that by agreement Hammen had assigned his right to the refund of premium to the general contractor. The record simply does not show such an assignment.

Hammen was asked: "Did you ever enter into any agreement with the defendant here [the general contractor] that if you ever got a bond premium that you would turn it over to the defendant?" and he answered, "No, but that was my intent." He was then asked, "But there was no agreement?" and he answered, "No." The most the record shows

is that there was a gratuitous, conditional intent on the part of Hammen to pay the refund to the general contractor if he received it from Fidelity.

The right of Hammen to unilaterally discharge Fidelity from liability on his bond and demand a refund of premium could have been decided in an action by Hammen against Fidelity. Instead Hammen brought an action against the general contractor for $626.59, the amount withheld by it on the electrical contract. The general contractor had no right to demand contribution from Hammen and withhold this sum, nor did it by an assignment acquire whatever right Hammen might have had against Fidelity for a refund of premium on the Hammen bond.

We hold that the circuit court of LaSalle County erroneously entered judgment in favor of Hansen & Werhane, Inc. against Fidelity and Deposit Company of Maryland. Accordingly, that judgment of the circuit court is reversed, together with the judgment of the appellate court modifying it.

*Judgment reversed.*